**STATE of Missouri, Respondent,**

v.

**Donald KOETTING, Appellant.**

**No. 62157.**

Supreme Court of Missouri,
En Banc.

May 11, 1981.
Rehearing Denied June 8, 1981.

Frank K. Carlson, Public Defender, Robert B. Satchell, Asst. Public Defender, Union, for appellant.

Bradley H. Lockenvitz, Pros. Atty., Linn, for respondent.

PER CURIAM.

A jury found appellant guilty of the offense of "harassment" under § 565.090.1(2), RSMo 1978,[1] and assessed his punishment at confinement for a period of one year under § 558.011.1(5). Judgment was entered accordingly, and the appeal therefrom challenges the constitutionality of said statutory provisions.

The information, in part, alleged that appellant "... for the purpose of disturbing Helen Bax made a telephone call to said Helen Bax and in so doing used the following coarse language offensive to one of average sensibility: 'I have $10.00 if you have a piece of ass'."

Evidence was offered from which the jury reasonably could have found: that prior to the date of the alleged offense, Mrs. Bax had notified the telephone company and the county sheriff that appellant had made repeated telephone calls to her residence; that many of the statements made to her involved propositions for sexual activity; that an example of the same was described by her as "I had asked him and begged him to quit calling, and I had, you know, told him I was going to call the sheriff if he didn't stop calling, and he just laughed and said, 'Call the sheriff, you

---

1. All statutory references are to RSMo 1978, unless otherwise indicated.

fucking bitch' and things like that"; that a "tap" had been placed on the residence phone and when the call, now the basis for the charge, was received she left the phone off the hook and used a neighbor's phone to call the telephone company; that she knew appellant and on each occasion recognized his voice; that appellant admitted making several calls to the Bax residence, but that each involved efforts to contact Mr. Bax to inquire as to possible employment, and he denied making the statements heretofore related but did testify that "I was wanting to talk to him about a job, and she was so hateful, she'd hang the phone up before I could say two words"; and, that the county sheriff, during the same period of time, had been asked by appellant "what he could do about somebody tying up his phone for 15 hours"—generally, a period of time comparable to that the telephone at the Bax residence was off the hook.

The statute reads as follows:

1. A person commits the crime of harassment if for the purpose of frightening or disturbing another person, he

(1) Communicates in writing or by telephone a threat to commit any felony; or

(2) Makes a telephone call or communicates in writing and uses coarse language offensive to one of average sensibility; or

(3) Makes a telephone call anonymously; or

(4) Makes repeated telephone calls.

2. Harassment is a class A misdemeanor.

First, we consider appellant's assertion that § 565.090 is unconstitutionally vague. As a preface thereto, appellant cites *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) to say that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law (citation omitted)." "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 597–598, 9 L.Ed.2d 561 (1963). It is specifically argued that the language: "purpose of frightening or disturbing another person" is vague because it is not restricted to a sole purpose thereby allowing an insignificant remark to "overshadow a primarily legitimate purpose." The argument is limited to the statement itself as no further attention is devoted to it, and we need not pursue it further.

■ Next, in appellant's estimation, the statutory phrase is vague because the words "frightening" or "disturbing" are susceptible of different definitions. *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), is cited wherein the Supreme Court found a city ordinance that prohibited three or more persons from assembling on a sidewalk and "there conducting themselves in a manner annoying to persons passing by" impermissibly vague. The word "annoy" was found to be vague because it failed to specify the standard by which the prohibited conduct was to be measured and said that what would be annoying to one passerby might not be annoying to another. Thereafter, appellant contends that the same finding would be forthcoming if either "frighten" or "disturb" were substituted for "annoy." On this point, appellant probably is correct. However, the ordinance condemned in *Coates* was vastly different from the present statute because the latter does specify a standard, *i. e.*, "purpose." Unlike the ordinance, the criminality of the conduct is measured in the statute not by the unpredictable effect upon third persons, but by the mental state of the actor. Under the ordinance in *Coates*, criminal liability would or would not have attached depending solely upon the pure chance that a particular unforeseen passerby might be annoyed. As an example, assume three persons were standing on a corner singing very poorly and a sensitive music critic, who surely would be annoyed if he heard such music, walked along the street. Criminal liability would

have attached only because the "critic" passed the corner. The hypothetical, admittedly rather strained, is a far cry from a situation where the singers intentionally would sing off-key *for the purpose* of annoying any passerby, which is the situation more comparable to and contemplated by the present statute.

The terms "purpose," "frighten" and "disturb" are words of common usage and definition and a person of ordinary intelligence would know by reading the statute that if he acts with the *purpose* of upsetting another, he subjects himself to criminal liability. At least for this portion of the statute, an actor does not have to guess or speculate whether or not his intentional act will adversely affect another; and thus, *Coates* is inapposite to the present case and we do not find any vagueness in this portion of the statute.

■ The second area of alleged vagueness is that part which measures the effect of the act on the listener, *i. e.*, "uses coarse language offensive to one of average sensibility." Appellant complains that the terms "coarse language," "offensive" and "average sensibility" are undefined and thus are vague. He maintains that the statute is a "bald attempt" to regulate speech, and it must pass a very stringent test. He emphasizes that the Supreme Court has found only two types of speech completely without first amendment protection: (1) obscene speech, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and (2) fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). He argues that the phrase "coarse language offensive to one of average sensibilities" can be interpreted to include not only areas of nonprotected speech but protected speech as well.

Further argument reference the statute's vagueness, vis-a-vis potential defendants, is made because the statute lacks guidelines instructing enforcement officials on its application. Appellant relies upon *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), wherein a Massachusetts statute making it a crime to "treat contemptuously" the flag of the United States was found vague because enforcement officials had virtually unfettered discretion to determine which conduct was contemptuous and subject to prosecution. Therein, the Court said:

Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law.

*Id.* at 575, 94 S.Ct. at 1248.

Appellant then submits that the General Assembly has abdicated its responsibility by failing to narrow the scope of the statute to the two areas of unprotected speech heretofore mentioned. To summarize this portion of appellant's argument, the phrase "coarse language offensive to one of average sensibilities," is vague because: (1) it fails to inform a potential defendant of the specific types of communications prohibited by the statute, and (2) it allows enforcement officials too much personal discretion in the determination of which communications violate the statute.

Respondent, by answer, correctly states that the concept underlying any vagueness challenge is whether or not the statute is sufficiently definite to give adequate warning of the proscribed conduct. It cites *United States v. National Dairy Corporation*, 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963) to say that "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged," and as said in *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954):

if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise. (citations omitted) And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, [the Supreme Court] is under a duty to give the statute that construction.

Respondent also places great emphasis on the fact that the statute is a specific intent crime; that a defendant must act with the *purpose* of causing a particular reaction by engaging in the proscribed conduct. The *National Dairy* case notes that the element of intent helps define the proscribed conduct. *Id.*, 372 U.S. at 35, 83 S.Ct. at 599. The necessity of showing intent would also seem to provide enforcement officials with a guideline as well.

The ultimate question is whether the phrase "coarse language offensive to one of average sensibility" is sufficiently definite to give notice of the proscribed conduct. Examining this language in light of the conduct with which appellant was charged, it is clear that his illicit suggestions are covered by the statute; most people would be offended by an invitation to engage in prostitution. Further, a person reading the plain language of the statute, and understanding the plain meanings of the words used therein, would be adequately informed that the use of the telephone or mails for the purpose of disturbing or frightening the listener or addressee would cause criminal liability to attach; and, we hold that the statute is not vague.

■ Second, we consider appellant's contention that the statute is overbroad and denies due process because its application is not limited to obscenities or fighting words and can be applied to otherwise protected speech. A similar claim was recently raised and rejected in *Kramer v. Texas*, 605 S.W.2d 861 (Tex.Cr.App.1980).

In *Kramer*, the Texas court considered an overbreadth challenge to V.T.C.A. Penal Code, Sec. 42.07(a)(1), which states in pertinent part:

(a) A person commits an offense if he intentionally:

(1) communicates by telephone or in writing in vulgar, profane, obscene, or indecent language or in a coarse and offensive manner and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient or intends to annoy or alarm the recipient;

In disposing of the overbreadth challenge to this statute, the thrust of which is very similar to § 565.090, the Texas court focused on *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), and *Rowan v. United States Post Office Department*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), both of which "recognize the interest of the State in protecting the recipient's privacy within the house;" *Kramer*, at 867. Like the Texas statute, § 565.090 does not purport to punish any act not directed to a private recipient.

*Cohen* involved a situation wherein the defendant was convicted of disturbing the public by wearing a jacket bearing a distasteful remark about the Selective Service System in a courthouse. In reversing the conviction on due process grounds, the United States Supreme Court stated the area within which the state could operate in regulating speech:

The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial *privacy interests* are being invaded in an essentially intolerable manner.

*Id.*, 403 U.S. at 21, 91 S.Ct. at 1786 (emphasis added).

Unlike the public expression situation wherein all an unwilling recipient need to is avert his eyes from an unwanted sight or ignore unwanted sounds, an unwilling recipient sitting in his home has absolutely no recourse against the intruding element except for potentially dangerous self-help or an appeal to the government for help. Indeed, *Cohen* demonstrates that when a speaker's exercise of his right of expression substantially infringes upon another's right to be free from such expressions, the state's regulation thereof is permissible and warranted.

Similarly, *Rowan* instructs that the government constitutionally may provide assistance to a private individual seeking to prevent others from intruding upon his privacy with unsolicited advertisements.

Weighing the highly important right to communicate, but without trying to determine where it fits into constitutional imperatives, against the very basic right to be free from sights, sounds and tangible matter we do not want, it seems to us that a mailer's right to communicate must stop at the mailbox of an unreceptive addressee.... To hold less would tend to license a form of trespass and would make hardly more sense than to say that a radio or television viewer may not twist the dial to cut off an offensive or boring communication and thus bar its entering his home.

*Id.*, 397 U.S. at 736–37, 90 S.Ct. at 1490.

However, unlike the mails and electronic media where a person can escape intrusion by simply not using their services, the telephone has come to be an important, if not vital, communications tool. To require a telephone subscriber to deny himself the use of the system to avoid harassment is clearly unreasonable and the state has a legitimate interest in providing a means of punishing those who would abuse the system and flagrantly infringe upon the privacy and solitude of another. This is precisely what the state has done by enacting § 565.-090. Because the statute applies only to protect the privacy of persons within their own homes, the statute is not overbroad.

■ Lastly, we consider appellant's arguments that the trial court erred in giving Instructions 5 and 6, which, obviously, revolve around their alleged failure to "properly instruct the jury on the full range of punishment as required by statute."

Being a class A misdemeanor, "harassment" is punishable by imprisonment for a term not to exceed one year, a fine not to exceed one thousand dollars or both. §§ 558.011.1(5), 560.016.1(1).

Instruction # 5 (MAI–CR2d 19.10) reads as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 16, 1979 in the County of Osage, State of Missouri, the defendant made a telephone call with Helen Bax and used the following coarse language offensive to one of average sensibility: "I have $10.00 if you have a piece of ass," and

Second, that the defendant engaged in the conduct submitted in this instruction for the purpose of disturbing Helen Bax, then you will find the defendant guilty of harassment.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of harassment, you will assess and declare the punishment at imprisonment fixed by you, but not to exceed one year.

Instruction # 6 (MAI–CR2d 2.60) reads as follows:

You are further instructed that if you find the defendant guilty of Harassment as submitted in Instruction No. 5, the court may, under the law, sentence the defendant to either:

1. Imprisonment for a term fixed by the court, but not to exceed the term assessed and declared by the jury in its verdict, or

2. The payment of a fine, the amount of which would be determined by the court in accordance with applicable statutes, or

3. Both such imprisonment and the payment of such a fine.

In your deliberations your duty is to determine whether the defendant is guilty or innocent, and if you find him guilty, to assess and declare the punishment as directed in other instructions given to you.

The specific complaint is that these instructions do not comport with § 557.036.2 because the jury is not given the power to assess a fine in addition to, or in lieu of, imprisonment. Section 557.036.2 states in pertinent part:

The court shall instruct the jury as to the range of punishment authorized by statute and upon a finding of guilt to

assess and declare the punishment as part of their verdict, unless the defendant requests in writing that the court assess the punishment in case of a finding of guilt.

Appellant would read the latter section to empower the jury to assess and declare not only "imprisonment" but a "fine" as well; and, then correctly does point up that Instruction 5 only permits the jury to fix punishment at imprisonment and effectually takes from it any consideration of a fine.

In contrast, respondent submits that nothing in § 557.036 dictates that the jury shall consider fines, if any; and suggests that under the statutory scheme even the designation of a period of confinement is to be advisory only (effective, however, as a maximum which the court cannot exceed, § 557.036.3). Thereafter, the argument is buttressed by a quote from that portion of § 557.036.1 which reads: "... the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Note is then taken of § 560.026, entitled "Imposition of fines," and which designates several factors which should be considered in determining the amount thereof. Even a casual reading of such provisions make it clear that many of the suggested "factors" would not be before the jury.

Both parties concede that the instructions as given are in compliance with the directives of MAI–CR2d; and we note again that the problem, if any, is before the Committee on Pattern Criminal Charges and Instructions. *Cf.: State v. Hunter,* 586 S.W.2d 345 (Mo.banc 1979), which tends to show the presence of additional questions when a so-called "graduated" felony is involved.

Under the circumstances, we have looked for any possible prejudice to appellant and can find none. The jury under the authority given to it assessed appellant's punishment at confinement for one year—the maximum allowed. Thus, it cannot be argued reasonably that only a fine would have been fixed had the possibility been available. Conversely, had the jury assessed a minimum confinement of thirty days, the possibilities would be more troublesome. The record suggests nothing to indicate that the instructions given deprived appellant of a lesser punishment. Other arguments, although not preserved, have been considered and rejected.

The judgment is affirmed.

DONNELLY, RENDLEN, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of BARDGETT, C. J.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent as to the holding reference instructing the jury regarding the punishment of a fine.

In my opinion the jury must be instructed as to the fine. It may well be that the matters required to be considered in arriving at the amount of the fine are such that the jury could not be given the information without prejudicing the case. In my opinion the jury should be instructed that it may declare by its verdict that the punishment shall be a fine and not imprisonment. This would, at least, let the jury know of the fine option and let it decide what type of punishment is appropriate. In short, the jury should have the option of rejecting imprisonment in favor of a fine.