**STATE of Missouri, Respondent,**

v.

**Donald KOETTING, Appellant.**

No. 48269.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 2, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
May 17, 1985.

Application to Transfer Denied
June 25, 1985.

Bradley H. Lockenvitz, Pros. Atty., Linn, for respondent.

Michael Radosevich, Columbia, for appellant.

SIMON, Presiding Judge.

Donald Koetting, defendant, appeals his conviction in the Circuit Court of Osage County of three counts of telephone harassment in violation of § 565.090 RSMo 1978. In a jury waived trial the defendant was sentenced to one year on each of the three counts to run consecutively. On appeal the defendant contends the trial court erred in finding him guilty on: (1) Count I because there was insufficient evidence of defendant's intent to frighten or disturb; (2) Counts II and III because the language the defendant used was not coarse language offensive to one of average sensibilities as proscribed by the statute; (3) all three counts because § 565.090 RSMo 1978 is unconstitutionally overbroad; and (4) all three counts because of the ineffective assistance of defendant's counsel. We affirm.

Initially, we shall address defendant's first contention of insufficiency of the evidence in Count I. The evidence in a jury waived case is reviewed by the same standard as in a jury tried case. *State v. Cole,* 662 S.W.2d 297, 299[1] (Mo.App.1983). We are not to weigh the evidence, but to deter-

mine whether there was sufficient evidence from which the trier of fact could reasonably have found the defendant guilty as charged. *State v. Turner*, 623 S.W.2d 4, 6[2] (Mo. banc 1981). We accept as true all evidence, direct and circumstantial, and all reasonable inferences supportive of the judgment, disregarding the contrary evidence. *Id.* at 6[1].

Section 565.090 RSMo 1978 requires a specific intent. The pertinent part of the statute reads: "A person commits the crime of harassment if for the purpose of frightening or disturbing another person, he ... makes repeated phone calls." The caller's intent to disturb or frighten need not be his sole intent or purpose in making the telephone calls, only one of his purposes. Intent is a state of mind and usually not susceptible to direct proof and generally, is established by circumstantial evidence. *State v. Ludwig*, 609 S.W.2d 417, 418[1] (Mo.1981).

Mr. Heckman, the complaining witness, and the defendant grew up in Westphalia, Missouri. They attended school together and now live near each other. At the time of the phone calls Mr. Heckman was the manager of systems programing in the computer center of the Missouri State Highway Patrol General Headquarters. Previously, defendant had contacted Mr. Heckman a few times for information on bus transportation. The defendant called the Heckman home eleven or twelve times from January 3, 1983 to February 8, 1983 and never stated any reasonable purpose for the calls. During one phone conversation defendant said he was going to knock Joe Hilkemeyer's head off. Mr. Heckman tried to stop the defendant's continuing calls. Mr. Heckman repeatedly hung up on the defendant. Several times, on the phone, Mr. Heckman asked the defendant not to call again. Twice, Mr. Heckman went to see the defendant in person to tell him to stop calling him.

It is reasonable to infer from these facts that it was clear to the defendant Mr. Heckman was bothered by the calls and wanted them to stop. The trier of fact could logically conclude that unless he intended to disturb Mr. Heckman, defendant would have abided by Mr. Heckman's requests and stopped calling him. Defendant's hostile comment about knocking Mr. Hilkemeyer's head off, further supports finding an intent to disturb. We find these facts and their reasonable inference substantially support a finding of the requisite intent. Accordingly, defendant's contention is without merit.

In his second point, defendant contends his convictions for Counts II and III should be reversed because the language he used is not prohibited by the statute. The record reveals that on April 8, 1983 defendant called Mr. Heckman and said, "This is Don Koetting, I want to talk to you, you son of a bitch." The next day defendant called Mr. Heckman again, essentially repeating the statement. The pertinent part of § 565.090 RSMo 1978 reads: "A person commits the crime of harassment if for the purpose of frightening or disturbing another person, he ... makes a telephone call or communicates in writing and uses coarse language offensive to one of average sensibility."

The word "offensive" is defined by Webster's New International Dictionary (3rd Ed.) as: "causing, or such as to cause, displeasure or resentment; insulting, disagreeable or nauseating or painful because of outrage to taste and sensibilities or affronting insultingness." While courts may recognize a widespread use of profane and vulgar language, the determination of a word's criminal offensiveness must be based on an examination of the circumstances in which it is spoken. *Karp v. Collins*, 310 F.Supp. 627, 637[9] (D.N.J. 1970); *State v. Hastings*, 133 Vt. 118, 330 A.2d 87, 89 (1974). The speaker's intention, the source, the location and the direction of the remark are all relevant factors.

Relying on *Stewart v. United States*, 428 F.Supp. 321, 323[1] (D.D.C. 1976) (profane language was directed to a police officer), defendant argues that son

of a bitch has become an everyday expression that is used so frequently that it has been reduced to non-meaning and therefore not one which offends a person of average sensibilities. His reliance is misplaced; Mr. Heckman is not a public official or officer of the law and further these words were directed to Mr. Heckman in his home via the telephone. Coarse language directed specifically to an average person is likely to be offensive. When the words are spoken in the privacy of one's home, the offensive character of the words is increased. *See, Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284, 291[11, 12] (1971); *Hott v. State*, 400 N.E.2d 206, 208 (Ind.App.1980).

■ Defendant, relying on *Tollett v. United States*, 485 F.2d 1087, 1093[5] (8th Cir.1973), argues that "some persons might be offended by being called a 'bum' or an 'SOB' yet others might consider the source of the insult and laugh it off." In *Tollett*, the recipients of the alleged offensive language are inadvertent viewers of mail messages. The writers of the remarks had no intent with regard to those viewers. Here, the remarks were directed specifically to Mr. Heckman and related to him via the telephone in the privacy of his home. *See, State v. Koetting*, 616 S.W.2d 822, 826[3] (Mo. banc 1981). The remarks were not made in jest or with "non-meaning" but, under all the circumstances, were made with the intent to disturb.

In similar circumstances courts have attached criminal liability for the use of the term son of a bitch. *Darnell v. State*, 72 Tex.Cr.R. 271, 161 S.W. 971 (Tex.Crim. 1913) (telephone harassment statute) and *State v. Leonard*, 255 Iowa 1365, 124 N.W.2d 429 (Iowa 1963) (conviction for breach of the peace for the use of obscene language on the telephone). Accordingly, Counts II and III are affirmed.

■ In his third point, defendant contends that § 565.090 RSMo 1978 is unconstitutionally overbroad. "... [T]he First Amendment means that the government has no power to restrict an expression because of its message, its ideas, its subject matter, or its content." *Police Department v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290[3], 33 L.Ed.2d 212, 216[3] (1972). This statement, however, is not absolute. There are certain classes of speech that are not protected by the First Amendment. These include lewd, obscene, profane, libelous and insulting or "fighting" words—those which by their very utterance inflict injury or intend to incite an immediate breach of the peace. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–2, 62 S.Ct. 766, 769[5], 86 L.Ed. 1031, 1035[2] (1942). In limited circumstances the government may also regulate protected areas of speech. The standard requires there be an overriding and compelling state interest. *Tollett v. United States*, 485 F.2d 1087, 1092[4] (8th Cir.1973). The courts have recognized a compelling government interest in protecting a private recipient from unwanted communication. *Rowan v. Post Office Dept.*, 397 U.S. 728, 736–7, 90 S.Ct. 1484, 1490–1[5–7], 25 L.Ed.2d 736, 742–3[3–4] (1970). Statutes protecting individuals from receiving unwanted communications in their homes and businesses have been upheld. *Rowan v. Post Office Dept.*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) (statute permitting receiver of lewd mail to prohibit future mailings of any nature by offending sender); *Kramer v. State*, 605 S.W.2d 861 (Tex.Cir.App.1980) (statute prohibiting telephone or written harassment). Responding to a claim for vagueness and overbreadth, our Supreme Court, in *State v. Koetting*, 616 S.W.2d 822 (Mo. banc 1981), properly applied the above standard and found § 565.090 RSMo 1978 was not vague or overbroad.

■ Defendant contends that *State v. Swoboda*, 658 S.W.2d 24 (Mo. banc 1983) overrules *State v. Koetting*, 616 S.W.2d 822 (Mo. banc 1981). We disagree. The facts in the first *State v. Koetting* and the present case distinguish them from *Swoboda*. *Swoboda* held § 574.010 RSMo 1979, a peace disturbance statute, unconstitutional because it encompassed constitutionally protected language. Section 574.010 RSMo 1979 could not have been saved by assert-

ing the compelling state interest of protecting substantial privacy interests. Section 574.010 RSMo 1979 included language spoken in public places and overheard by inadvertent listeners. By contrast, § 565.090 RSMo 1978 is limited to language directed to a specific individual in the privacy of his home or business. Defendant has raised no new issues of merit. Accordingly, his point is denied.

Finally, defendant contends that his conviction was the result of the ineffective assistance of his counsel. "The right to effective assistance of counsel is the equivalent to the right to counsel." *Thomas v. Lockhart*, 569 F.Supp. 454, 463[2] (E.D.Ark.1983) (affirmed in 738 F.2d 304 (8th Cir.1984). Appellate review of ineffective assistance of counsel must be preserved in a motion for new trial filed by the trial attorney. *State v. Martin*, 451 S.W.2d 96, 99[5] (Mo.1970). But where defendant was represented by a court appointed trial counsel and is represented by a different counsel on appeal, this is not required. *State v. Cluck*, 451 S.W.2d 103, 106–7[7] (Mo.1970). Ordinarily, the contention that the accused was not effectively represented at trial is not reviewed by the appellate court, unless the record sufficiently develops facts essential to a meaningful review of the point. *State v. Mitchell*, 620 S.W.2d 347, 348[3] (Mo. banc 1981). Only exceptional cases will warrant consideration of the point on direct appeal. *See, State v. Hobbs*, 612 S.W.2d 387 (Mo.App. 1981), a situation in which defense counsel had died precluding any evidence explanatory of trial strategy.

Defendant asserts two reasons supporting his contention of ineffective counsel. First, relying on *Brown v. Craven*, 424 F.2d 1166 (9th Cir.1970), defendant argues: (1) he was forced to retain a trial attorney he did not want; (2) he refused to talk with his lawyer before trial; and (3) the trial attorney himself requested to withdraw on these bases. In *Brown*, the court held that to compel a defendant charged with a grievous crime to undergo trial with assistance of an attorney with whom he is in conflict with is to deprive him of effective counsel. *Id.* at 1170. Further, Brown was on trial for murder, a very serious crime, and would not communicate with his attorney, and repeatedly requested a new attorney. The court made no inquiries into his reasons and the appointed attorney was retained. *Id.* at 1169[1]. The court did not give Brown any real opportunity to improve his situation.

Here, the defendant was given several opportunities to obtain counsel. He was charged with telephone harassment, a misdemeanor, and the court appointed an attorney. Defendant refused to cooperate and the attorney withdrew. The court then asked the defendant who he wanted for an attorney. The record does not clearly indicate defendant's response, but a second attorney was appointed. Defendant refused to cooperate with that attorney. At trial, defendant told the court he did not believe the attorney wanted to represent him properly, but when given an opportunity to give his reasons to the court he refused. The attorney's request to withdraw was denied by the court.

Even *Brown* recognizes some limits on the trial court's duty to provide effective counsel. The court is not required to provide the defendant with the particular attorney he requests. *Brown* at 1170. Similarly, a defendant should not be able to arbitrarily, repeatedly, request a new attorney.

However, the record does not fully develop the issue. It is not clear whether the trial attorney's request to withdraw reflects a genuine belief he was unable to represent the defendant effectively or whether he was merely responding to his client's pressure and threats.

Second, defendant contends that the lack of communication between the defendant and his attorney resulted in inadequate preparation of trial strategy. The record does not indicate whether or not the defendant requested a jury trial, the attorney's reasons for waiving a jury trial, the extent of the attorney's preparation, the

degree of the conflict between defendant and his attorney, or the reasons for the attorney's cross-examination and defense strategy.

We conclude, therefore, that we should not review the issue of ineffective assistance of counsel.

However, defendant is not without a remedy. If he continues in his belief that he was deprived of effective assistance of counsel, he may file a Rule 27.26 motion to vacate judgment and sentence. An evidentiary hearing may be held and a full disclosure of all the facts can be had. *State v. Cluck*, 451 S.W.2d 103, 107[8] (Mo.1970).

Judgment affirmed.

STEWART and STEPHAN, JJ., concur.