**Donald Kenneth ALEXANDER,**
**Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 46800.**

Missouri Court of Appeals,
Western District.

Sept. 7, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 2, 1993.

**356**

Jacqueline K. McGreevy, Kansas City, for appellant.

Jane Garland, Asst. Pros. Atty., Boone County, Columbia, for respondent.

Before TURNAGE, C.J., and LOWENSTEIN and HANNA, JJ.

TURNAGE, Chief Judge.

Donald Kenneth Alexander was charged with two counts of harassment under § 565.-090, RSMo 1986. The jury found him guilty on both counts and assessed punishment at three months in jail on each count. The trial court sentenced Alexander to three months imprisonment on the first count, suspended execution of sentence as to the second count, and placed Alexander on unsupervised probation for two years. On appeal, Alexander contends the statute is not applicable to him since the party that received his communication was not one of the parties found to be the victims of his harassment and that the statute and its application to his statements made in a civil pleading violate his right to free speech and denied him access to the courts. Alexander raises additional points which will be discussed subsequently. Affirmed.

Alexander is a graduate of the University of Missouri Law School. His application for admission to the bar was denied. Alexander sued the local bar committee and others in federal court for conspiring to "... delay, hinder and eventually reject" his application to the bar association. Alexander's suit was dismissed on summary judgment. On appeal the Eighth Circuit issued an opinion and Alexander filed a petition for re-hearing. Steve Scott, the Committee's attorney, received a copy of the petition. In the petition, Alexander stated:

> While I fully expect that this Petition for Rehearing will be summarily denied, I am filing it so that it will be on the official record and I am sending copies to the local and national news media so that when the corpses of co-conspirators are found, no one can say that there is no legal or rational basis for the killings. Since the civil courts and the United States Attorney's office refuse to even hear or investigate my complaint, I have no recourse but deadly force to expose and end the conspiracy that is gradually taking my life as surely as if I were being fed a deadly poison. I am willing to sacrifice the rest of my shattered life in order to ensure a jury trial concerning this matter so that the general public can see the total corruption of our legal system. Men have willing [sic] died for lesser causes. I will plead self-defense and justifiable homicide ... The blood of the co-conspirators is upon their own heads.
>
> ... petitioner is left with no alternative but resulting to deadly force in order to get relief from the ongoing conspiracy ... Moreover, since the conspiracy is ongoing and gradually sapping petitioner's very lifeblood, the use of deadly force is justified by the legal grounds of self-defense and justifiable homicide. I will kill as many as [sic] the co-conspirators as I possibly can in order to force a criminal trial to expose and end the conspiracy.

Scott informed two members of the Committee, Wilson and Shurtleff, of the threats.

Alexander contends his right to Due Process was violated because the Amended Information did not sufficiently state a charge under § 565.090, RSMo 1986. That statute states in pertinent part:

1. A person commits the crime of harassment if for the purpose of frightening or disturbing another person, he

(1) communicated in writing or by telephone a threat to commit any felony; or ...

Alexander argues that the term "communicated" in subdivision (1) does not include a message delivered by a third party but requires the message to be communicated to the person alleged to have been frightened or disturbed. Alexander claims the Amended

Informations in this case are deficient because the persons disturbed (Shurtleff and Wilson) were different from the person who received the communication (Scott).

Alexander cites no authority for his interpretation of the statute and his argument attempts to read into the statute a restriction that is not present. If the legislature had intended such a result the statute could have required the person disturbed and the person communicated to be the same person. However, as written the statute makes no such requirement. Our courts are not to "read into a statute words not found within the statute when the language of the statute is clear." *State v. Rellihan*, 662 S.W.2d 535, 545[9] (Mo.App.1983).

■ Under Alexander's interpretation someone who uses the mail or other courier services to deliver a harassing written message would avoid criminal liability. Such an interpretation is not warranted since the legislature is presumed not to intend an absurd result. *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 495[1] (Mo. banc 1984). The use of an intermediary for the delivery of a threat to commit a felony will not absolve the maker of criminal liability under Sec. 565.-090(1)(1).

Alexander also challenges the statute as being overbroad in violation of his First and Fourteenth Amendment right of free speech. This statute was previously attacked for vagueness and overbreadth in *State v. Koetting* ("*Koetting I*"), 616 S.W.2d 822 (Mo. banc 1981). The court found the statute was not unconstitutionally vague or overbroad. *Id.* at 825–827[2, 3]. The Appellant in *Koetting I* was later tried under § 565.090(1)(4) for making repeated harassing telephone calls and again challenged the statute as overbroad in *State v. Koetting* ("*Koetting II*"), 691 S.W.2d 328 (Mo.App.1985). The court relied on *Koetting I* and rejected the constitutional challenge. *Id.* at 331[8, 9].

The Supreme Court has jurisdiction over challenges to a state statute involving real and substantial constitutional questions, however, "a real and substantial constitutional question is not raised when the Supreme Court has once determined the question." *Hampton Foods, Inc. v. Wetterau Finance Co.*, 831 S.W.2d 699, 701[3] (Mo.App.1992). Alexander's challenge is properly before this court since the Supreme Court previously decided § 565.090 is not unconstitutionally vague or overbroad in *Koetting I*. Alexander's challenge to the constitutionality of § 565.090 has been decided. Therefore, there is no real and substantial constitutional question presented.

Alexander contends his communication is entitled to greater First Amendment protection since it was a part of a pleading filed in a civil case. However, Alexander discloses no authority which provides for protection from criminal laws for statements made in a judicial proceeding. Furthermore, Alexander's statements would not even qualify for the privilege which can exempt a person from civil liability which is normally granted to statements made in judicial proceedings.

■ Courts have held that statements made in motions, pleadings, or other documents filed in judicial proceedings are entitled to a privilege. However, even in that instance there is a threshold requirement that the statements be relevant to the issues before the judicial body. *Barchers v. Missouri Pacific R.R. Co.*, 669 S.W.2d 235, 238[4] (Mo.App.1984). In *Hager v. Major*, 353 Mo. 1166, 186 S.W.2d 564 (1945), the court held:

> ... but that matter which is clearly impertinent and irrelevant and also false and malicious is actionable.

*Id.* 186 S.W.2d at 569[5], *quoting*, Cooley On Torts, 4th Ed., Sect. 156.

■ Alexander's threats of violence were clearly impertinent and irrelevant. As a result, Alexander's statements in the pleadings would be afforded no privilege had Alexander faced an action for libel. Nor is there any reason to grant him immunity from criminal prosecution.

■ Further, Alexander's criminal prosecution for statements made in a civil pleading did not violate his right under the Missouri constitution Art. 1, Sec. 14, which provides "that the courts of justice shall be open to every person". The court in *State ex rel. National Refining Co. v. Seehorn*, 344 Mo.

547, 127 S.W.2d 418, 424[9, 10] (1939), held that this section was not intended to create rights but to protect citizens in enforcing rights recognized by law. Alexander was not denied the right to bring his civil action against the "co-conspirators" by his criminal prosecution. Access to the courts does not include the right to file pleadings containing death threats that violate the criminal law.

The original information charged Alexander with communicating to and disturbing Loramel Shurtleff in Count I and Bruce Beckett in Count II. Shurtleff and Beckett were members of the Committee. The First Amended Information changed the person communicated to in Counts I and II to the U.S. Court of Appeals, 8th Circuit. It also changed the person intended to be disturbed in Count II to Betty Wilson, another member of the Committee. The Second Amended Information changed the person communicated to in Counts I and II to Steve Scott.

■ Alexander contends he was denied Due Process as a result of the name changes in the First and Second Amended Informations. Rule 23.08 provides "[a]ny information may be amended or substituted for an indictment at any time ... if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." Alexander was charged with the same offense (violation of § 565.090) in both the original and amended informations, so his challenge under the first part of Rule 23.08 is without merit. Furthermore, the change in the victim's name in an amended information does not constitute a charge of a different offense. *State v. Hutchinson*, 740 S.W.2d 184, 186[1] (Mo.App.1987).

■ "The test for prejudice under Rule 23.08 is whether a defense to the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after, as well as before, the amendment." *State v. Bratton*, 779 S.W.2d 633, 634[2] (Mo. App.1989). Alexander does not offer any proof that the name changes cost him some defense on which he intended to rely or forced him to acquire new evidence.

■ Alexander contends there was insufficient evidence to support the jury's verdict since there "was no evidence whatsoever that Alexander had a purpose to disturb" the victims. The function of this court is not to weigh the evidence, but "to determine whether there was sufficient proof from which the jury could reasonably have found defendant guilty as charged." *State v. Turner*, 623 S.W.2d 4, 6[1, 2] (Mo. banc 1981), *cert. denied*, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). In so doing, the court "accepts as true all evidence, direct and circumstantial, and all reasonable inferences supportive of the judgment, disregarding the contrary evidence." *Koetting II* at 330[1].

■ In *Koetting II*, the court stated "[t]he caller's intent to disturb or frighten need not be his sole intent or purpose ... only one of his purposes" in order for a violation of § 565.090 to occur. *Koetting II* at 330[2, 3]. Additionally, the court stated "[i]ntent is a state of mind and usually [is] not susceptible to direct proof and generally, is established by circumstantial evidence." *Id.* There was substantial circumstantial evidence which would support the jury's verdict that Alexander had an intent to disturb or frighten.

The writing in question discussed Alexander's need to use "deadly force to expose and end the conspiracy" and stated the "blood of the co-conspirators is upon their own heads." The victims fell into the category of "co-conspirators" and both testified to being disturbed by Alexander's statements. Alexander's position that such death threats could be made without the one making the threats knowing the victims would be disturbed as a result is unreasonable.

Alexander attempts to support his claim of insufficiency by pointing to certain parts of testimony of other witnesses which may cast doubt as to whether Alexander's purpose was to disturb the victims. However, Alexander's contention that these witnesses did not think the threats were directed to the victims or were not serious was not believed by the trier of fact. There was ample evidence from which the jury could draw a contrary inference.

■ Alexander further argues the trial court violated his right to compulsory process by quashing twenty-two of the twenty-five subpoenas he requested. The right to compel the attendance of witnesses derives from the Sixth Amendment of the U.S. Constitution and Article 1, Sec. 18(a) of the Missouri Constitution. *State v. Lewis*, 735 S.W.2d 183, 188[10] (Mo.App.1987). Since the language of that section embodies the same right to compulsory process as the Sixth Amendment as interpreted by the U.S. Supreme Court in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the same test for a violation of that right is applicable under both constitutions.

■ Federal courts have consistently stated the right to compulsory process is not an absolute right. *U.S. v. Macklin*, 902 F.2d 1320, 1329[11] (8th Cir.1990), *cert. denied*, 498 U.S. 1031, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991). In order to prove a violation of this right Alexander must show that the testimony of the witness sought would be both material and favorable. *Id.* Additionally, if the testimony of the witnesses would be repetitive or cumulative, the trial court is within its discretion to quash a subpoena of those witnesses or otherwise exclude their testimony. *U.S. v. Gilliss*, 645 F.2d 1269, 1279[15] (8th Cir.1981).

■ The trial court in the case at bar made a finding as to each subpoena quashed that the testimony of the witness would either be irrelevant or cumulative. All of the witnesses whose testimony was deemed irrelevant were supposed to provide testimony to prove the presence of a conspiracy to exclude Alexander from the Missouri bar. The presence or absence of a conspiracy was not an issue in Alexander's trial for harassment. The court did not abuse its discretion in quashing the subpoenas.

■ Alexander claims he was denied his right to effective assistance of counsel due to an alleged conflict of interest which existed between Alexander's trial counsel and a prosecution witness. Alexander's trial counsel, Strand, was employed as a State Assistant Public Defender. Loramel Shurtleff was on the Public Defender Commission, which appoints the Public Defender, and was one of the victims named in the Amended Information. The appointed public defender hires the assistant public defenders. Shurtleff testified at trial in regard to being disturbed by the writings of Alexander which threatened her life as one of the "co-conspirators". Alexander contends that Strand's cross-examination was prejudiced.

To prove a conflict of interest:

something must have been done by counsel, or something must have been forgone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to another.

*State v. Abbott*, 654 S.W.2d 260, 274[16] (Mo. App.1983). "The mere existence of a possible conflict of interest does not preclude effective representation." *Johns v. State*, 741 S.W.2d 771, 777[18–20] (Mo.App.1987), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988). Alexander offers no proof that his counsel's performance failed to provide the diligence that a reasonably competent attorney would provide under similar circumstances. *Seales v. State*, 580 S.W.2d 733, 736–737[3] (Mo. banc 1979). Consequently, Alexander fails to prove a denial of his constitutional rights due to ineffective assistance of counsel.

Alexander contends the court should not have allowed the victims named in the information to testify because their testimony was irrelevant. The victims of the harassment testified at trial that they were disturbed and frightened by Alexander's threats. The victims also testified that other crimes of which they had knowledge reinforced their fears when they heard the threats.

■ One of the issues in Alexander's trial was whether Alexander had the intent to disturb or frighten the victims. The court in *State v. Ludwig*, 609 S.W.2d 417 (Mo.1981), stated, "[i]ntent may and generally must be established by circumstantial evidence." *Id.* at 418[1]. Furthermore, "a man is presumed to intend the natural and probable consequences of his intentional acts." *State v. Dixon*, 655 S.W.2d 547, 558[23] (Mo.App. 1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984). There was no

abuse of discretion in the trial court's decision that the victims' testimony was relevant to show the natural and probable consequences of Alexander's writings in that it tended to prove Alexander's intent.

 The victims' testimony with regard to other crimes was arguably irrelevant. However, there was no objection to that testimony. Absent an objection no claim of error was preserved for review. *State v. Jones*, 515 S.W.2d 504, 506[3, 4] (Mo.1974).

Alexander contends he was denied his right to a fair trial when the trial court overruled his objection to the testimony of one of the witnesses because a statement of that witness had not been disclosed by the prosecutor before trial. The trial court found no constitutional violation since Alexander had access to the witness and failed to interview him and the prosecution had just learned of the statement which Alexander made to the witness minutes before trial.

A trial court does not abuse its discretion by allowing a witness to testify when the defendant was unable to interview the witness if the state gave the name of the witness to the defendant and there was no evidence of impropriety by the state. *State v. Blue*, 847 S.W.2d 494 (Mo.App.1993). Likewise, no proof of bad faith was shown here and the trial court was within its discretion to find that there was not a violation of the discovery order or unfair surprise to Alexander.

Alexander claims the trial court erred in not declaring a mistrial *sua sponte* during the prosecution's closing argument. The prosecution made the following comments during closing argument:

> ... if you let him get away with that, then it's giving permission to everyone to say, "If you don't get what you want, then you can take whatever steps are necessary to get it.
> ... Who knows what the Defendant might have done.

Since Alexander did not object to the first statement, no error is preserved for review. *State v. Childers*, 801 S.W.2d 442, 444[1, 2] (Mo.App.1990).

Alexander objected to the last statement and the court sustained the objection and instructed the jury to disregard the remark. The trial court granted all the relief requested. The trial court's decision to instruct the jury to disregard the statement of the prosecution is "deemed to cure its prejudicial effect, unless the prosecutor, thereafter, fails to abandon the improper argument." *State v. Earvin*, 743 S.W.2d 125, 129[3] (Mo.App.1988). Here the prosecutor made no further improper comments and Alexander's claim of prejudice is without merit.

The judgment is affirmed.

All concur.