STATE of Missouri, Plaintiff–Respondent

v.

Tom YEARGAIN, Defendant–Appellant.

**Nos. 20286 and 20288 to 20293.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 15, 1996.

---

Joe Zuzul, Nevada, for appellant.

Duane Cooper, Pineville, for respondent.

PARRISH, Judge.

Tom Yeargain (defendant) was charged with four offenses of violating an order of protection, §§ 455.085.7 and .8 (Nos. 20286, 20288, 20291 and 20293); two offenses of harassment, § 565.090 (Nos. 20289 and 20290); possession of marijuana, a controlled substance, § 195.202 (No. 20292, Count I); and possession of drug paraphernalia with intent to use, § 195.233 (No. 20292, Count II).[1] The cases were consolidated for trial in the Associate Circuit Judge Division of the Circuit Court of McDonald County.

The cases were tried by the judge without a jury. Defendant was found guilty of all the charged offenses. He filed notices of appeal in each case. The appeals have been consolidated.

Defendant was originally represented by employed counsel. His attorney appeared with him October 20, 1994, for a hearing on a motion to revoke bond. The hearing was continued. Thereafter, the judge who continued the hearing recused and the cases were assigned to the judge before whom they were later tried.

Copies of docket entries in the legal files that are part of the record in this consolidated appeal show motions to withdraw filed by defendant's attorney February 9, 1995. Those entries are followed, in each case, by entries that state, "J. Curless telecon: 'Motion to w/d as atty sustained.' "

The record on appeal does not include transcripts of defendant's arraignment hearings. However, according to docket entries, he was arraigned on the charges February 23, 1995. The docket entries show the appearance of the prosecuting attorney; that defendant appeared "in person" and pleaded not guilty to each offense; and that each case was set for trial on April 17, 1995, at 9:30 a.m.

Docket entries dated March 17, 1995, state, "Df files motions." Docket entries dated March 21, 1995, state that per telephone conversation with the assigned judge, motions for continuance and motions for change of venue were denied.

1. The dates of occurrences which are the bases for the charged offenses are within the period from June 5, 1994, through December 14, 1994. Some of the applicable statutes are RSMo Supp. 1993, others are RSMo 1994. The language of the applicable statutes is the same in both revisions. References to statutes in this opinion are to RSMo 1994 for convenience.

■ On April 17, 1995, defendant appeared for trial. He was not represented by counsel. The trial judge told defendant he intended "to consolidate the five order violation charges and the harassment charge." Defendant was asked if he objected and replied, "No, Your Honor." Thereafter, the following exchange occurred:

THE COURT: ... The State is present by Prosecuting Attorney Duane Cooper. Defendant is present in person. And do you have counsel, Mr. Yeargain?

MR. YEARGAIN: I've got counsel, Your Honor, but it's not here today. It's—We've got a problem with the discovery clause here, I think.

THE COURT: Well, are you represented by counsel today?

MR. YEARGAIN: No, I'm not, Your Honor.

THE COURT: Okay. You understand you have a right to counsel, and you were arraigned and you're aware of that?

MR. YEARGAIN: Yes.

THE COURT: Okay. And you're ready to proceed without counsel today?

MR. YEARGAIN: No, Your Honor, I'm not.

Defendant then asked to approach the bench. He told the trial judge he filed a motion for discovery on the "17th of last month"; that he "just received this—this last Friday."[2] Defendant told the trial judge that he had a tentative agreement with an attorney, "but we were waiting on this here [assumedly, the state's response to defendant's request for discovery] to let him look it over."

The prosecuting attorney told the court he had not received timely notice of the request for discovery. He explained that the request for discovery was filed with the trial court but that he had not received a copy of it when it was filed. He told the court, "When I was made aware of it, I got my girls to put all the stuff together and send it out."

The trial judge explained to defendant that the request for discovery was not timely filed; that the prosecuting attorney's re-sponse was gratuitous—"He wasn't required to even respond to it. So that's—that's not his fault."

The discussion concluded with the colloquy:

MR. YEARGAIN: ... Well, Your Honor, I don't have an attorney.

THE COURT: Uh-huh.

MR. YEARGAIN: And I know that I need one. But I have a tentative agreement with—with this Steve Soutee in Marionville.

THE COURT: Uh-huh. I know Mr. Soutee. This was—These charges have been pending, some of them, since last June.

MR. YEARGAIN: I'm aware of that, Your Honor.

THE COURT: And you were arraigned almost two months ago. And although I'd like to—I mean, I'm not trying to be hard-ass about this, but I'm not going to continue—

.    .    .    .    .

MR. YEARGAIN: May I request that—or make it a matter of court record that I do need an attorney. And if this proceeding proceeds, I'm afraid that I would not have proper representation. Possibly by the State or somebody. I—

THE COURT: Uh-huh. That is—That's very possible. But the time to have taken care of that would have been two months ago when—

MR. YEARGAIN: I understand.

THE COURT: Rather than this morning or—you know, a couple of days ago.

Defendant's first point asserts the trial court erred in requiring defendant to proceed to trial because it did not determine that defendant knowingly and intelligently waived his right to counsel. Similar circumstances were addressed in *State v. Bethel*, 896 S.W.2d 497 (Mo.App.1995). There, as here, a defendant did not expressly waive his right to counsel and, having appeared on the date

2. The trial date, April 17, 1995, was on a Mon-    day.

his case was set for trial, was required to proceed *pro se.*

■ This court said:

A defendant in a criminal case who is faced with the possibility of incarceration and who declines counsel, appointed or otherwise, should be admonished of the perils of self-representation. [*State v. Yardley,* 637 S.W.2d 293 (Mo.App.1982)] at 296. He should be given such advice as is necessary to establish he is acting knowingly and intelligently. *See Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

As explained in *State v. Wilson,* [816 S.W.2d 301 (Mo.App.1991)] at 306:

Because of the strong presumption against waiver of the constitutional right to counsel, the judge, in discharging his duty, must investigate "as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke,* 332 U.S. at 723–24, 68 S.Ct. at 323, 92 L.Ed. at 321; [*State v.*] *Gilmore,* 697 S.W.2d [172] at 174 [Mo. banc 1985]; [*State v.*] *Edwards,* 592 S.W.2d 308 [Mo. App.1979].

.  .  .  .  .

Although the "knowing and intelligent" waiver standard usually is applied in the context of a voluntary and expressed relinquishment of the right to counsel, it is clear that the same criteria should be applied where, as here, the accused fails to retain an attorney in a timely manner. "A court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." *U.S. v. Allen,* 895 F.2d 1577, 1579 (10th Cir.1990); *See also Yardley,* 637 S.W.2d at 296. [Footnote omitted.]

*Id.* at 500. Further, it is essential "that a defendant be advised of the difficulties of proceeding pro se while he still has a choice in the matter and not . . . after a trial court ruling that he must proceed pro se." *Wilson,* 816 S.W.2d at 307.

There is nothing in the record on appeal that reveals defendant was advised of the perils of self-representation by the trial court. There is no showing of any investigation to determine that defendant made a knowing and intelligent waiver of counsel. Proceeding to trial without ascertaining that defendant knowingly and willingly waived his right to counsel was error. Point I is granted. The judgments of conviction must be reversed. Nos. 20289, 20290 and 20292 will be remanded for new trial.[3] The status of the violation of protective order cases, Nos. 20286, 20288, 20291 and 20293 is governed by the disposition of Point II.

Defendant presents three other allegations of error. Points II, III and IV assert that the informations charging defendant with violations of protective orders (Nos. 20286, 20288, 20291 and 20293) and the informations charging harassment (Nos. 20289 and 20290) do not allege commission of crimes and, therefore, the trial court had no jurisdiction to proceed against defendant for allegedly committing those offenses. Point II is directed to the violation of protective order cases. Points III and IV are directed to the harassment cases.

■ The informations charging violations of protective orders are patterned after MACH–CR 32.52 [1989 New]. They each allege:

that the Defendant, Tom A. Yeargain,[4] in violation [or is in violation] of Section 455.050 and 455.085, RSMo, committed the Class A misdemeanor of violation of order of protection, punishable upon conviction under 455.085, 558.011.1(5) and 560.016 RSMo, in that on or about [dates of offenses charged], in the County of Mc-

---

3. On remand, if defendant is not represented by counsel, the trial court may wish to refer to discussions in *State v. Bilyeu,* 867 S.W.2d 646 (Mo.App.1993); *State v. Wilson,* 816 S.W.2d 301 (Mo.App.1991); and *State v. Quinn,* 565 S.W.2d 665 (Mo.App.1978).

4. The information in No. 20293 does not have defendant's name typed in the space following the word "Defendant."

Donald, State of Missouri,[5] the Defendant having been personally served a copy of an order of the Circuit Court of McDonald County which prohibited him from disturbing the peace of Petitioner [or the Petitioner], violated it by [stating conduct alleged to have constituted the peace disturbance on which the charge was based].

Defendant bases his claim that the informations in the violation of order of protection cases do not allege crimes on §§ 455.085.7 and .8. He correctly asserts that those statutes establish the criminality of violations of orders of protection and that the conduct they establish as constituting criminal offenses does not include disturbing the peace. *See State v. Cooper,* 871 S.W.2d 92, 93 (Mo. App.1994).

Section 455.050.1(1) provides that orders of protection that protect a petitioner from abuse or stalking may include prohibitions against "disturbing the peace of the petitioner." However, the language in the statutes that establish the crime of violating an order of protection, §§ 455.085.7 and .8, does not state that violation of an order prohibiting peace disturbance constitutes commission of that offense. Acts in violation of orders of protection that are criminal acts are those "with regard to abuse, stalking, child custody, or entrance upon the premises of the petitioner's dwelling unit." §§ 455.085.7 and .8.

▮ Sections 455.085.7 and .8 are criminal statutes. Statutes defining a crime must be construed liberally in favor of a defendant and strictly against the state. *State v. Chadeayne,* 323 S.W.2d 680, 685 (Mo. banc 1959); *State v. Dougherty,* 358 Mo. 734, 216 S.W.2d 467, 471 (1949); *State v. Kayser,* 552 S.W.2d 27, 29 (Mo.App.1977); *State v. Alderman,* 500 S.W.2d 35, 36 (Mo.App.1973). "Statutes defining crimes will not be interpreted as embracing any but those acts or omissions clearly described in the statute both within

the letter and spirit of the law." *State v. Fredrickson,* 689 S.W.2d 58, 61 (Mo.App. 1984).

The allegations that charge defendant with violating orders of protection prohibiting him from disturbing the petitioner's peace do not specify criminal conduct violative of §§ 455.085.7 or .8. Point II is granted. Defendant is discharged in Nos. 20286, 20288, 20291 and 20293, because the informations filed in those cases fail to state criminal offenses.

Points III and IV allege that the informations in Nos. 20289 and 20290 "did not allege the commission of a crime." Point III is directed to No. 20290; Point IV to 20289.

Section 565.090 provides, in part, as applicable here:

1. A person commits the crime of harassment if for the purpose of frightening or disturbing another person, he

.    .    .    .    .

(2) Makes a telephone call or communicates in writing and uses coarse language offensive to one of average sensibility; or

.    .    .    .    .

2. Harassment is a class A misdemeanor.

▮ The information filed in No. 20290 alleges that defendant "for the purpose [sic] of disturbing Kathy Guinn, formerly Kathy Yeargain, communicated in writing with Kathy Guinn to-wit: see attached card, incorporated herein as if fully set forth, and the victim identified the handwriting as that of her former husband."

The language on the card said, "Congratulations on getting hitched," followed by defendant's handwritten communication, "Just wanted to say hi and let you know how— know I am thinking of you. But I had to [inaudible] [6] to you and that cheap pecker had fun cleaning all the baby shit. You

---

5. The information in No. 20293 does not contain the words "in the County of McDonald, State of Missouri" at this location in its text.

6. The card referenced in the information is not included in the legal file. It was read into the

record at trial and is quoted herein from the transcript. The verbatim record from which the transcript was prepared was not made by a court reporter but was made by means of an approved magnetic tape recording device. Not all of the recording was understood by the transcriber.

deserve it. I have girlfriends that would like to meet you. Call sometime. Loving every minute of it, 007, Tom."

Defendant contends the language in the communication that is the basis of the criminal charge is not "coarse or offensive to one of average sensibility." He cites no case in support of his contention, stating in his brief that none were found that addressed the specific language he questions.

*State v. Koetting,* 691 S.W.2d 328 (Mo.App. 1985), discussed the type of language that may be coarse and offensive:

> The word "offensive" is defined by Webster's New International Dictionary (3rd Ed.) as: "causing, or such as to cause, displeasure or resentment; insulting, disagreeable or nauseating or painful because of outrage to taste and sensibilities or affronting insultingness." While courts may recognize a widespread use of profane and vulgar language, the determination of a word's criminal offensiveness must be based on an examination of the circumstances in which it is spoken. *Karp v. Collins,* 310 F.Supp. 627, 637[9] (D.N.J. 1970); *State v. Hastings,* 133 Vt. 118, 330 A.2d 87, 89 (1974). The speaker's intention, the source, the location and the direction of the remark are all relevant factors.

*Id.* at 330. The court in *Koetting* further stated, "Coarse language directed specifically to an average person is likely to be offensive." *Id.* at 331.

This court concludes that a fact-finder could find that there are circumstances in which the language identified in the information in No. 20290 would be "coarse language offensive to one of average sensibility." Point III is denied.

█ The accusation in No. 20289 was that defendant "made a telephone call with Kathy Yeargain and in doing so used the following coarse language offensive to one of average sensibility, 'When are you going to take taht [sic] son of a bitch home so I can call and cuss him', 'When are you and that son of a bitch going to get mar ...' (Kathy Yeargain then hung up)."

Defendant contends that the language attributed to him does not amount to commission of the offense of harassment. He asserts the S.O.B. expletive has not been determined to constitute coarse language offensive to a person of average sensibility. He suggests that no case has determined that its use amounts to harassment for purposes of § 565.090 and "asks this court to hold the information did not allege the commission of an offense."

Contrary to defendant's claim that the particular expletive that affords the foundation for the charge in No. 20289 has not been addressed with respect to the charge of harassment, that issue was discussed in *Koetting, supra,* at 330–31, *citing Tollett v. U.S.,* 485 F.2d 1087, 1093[5] (8th Cir.1973); *Darnell v. State,* 72 Tex.Crim. 271, 161 S.W. 971 (1913); and *State v. Leonard,* 255 Iowa 1365, 124 N.W.2d 429 (1963).

The same assertion was made in *Koetting* that defendant now raises—that the S.O.B. expletive is not one that offends a person of average sensibilities. *Koetting* found otherwise. This court finds no error in the trial court's determination that the information stated the offense of harassment. Point IV is denied.

The judgments of conviction are reversed. Nos. 20289, 20290 and 20292 (the harassment charges and the possession of controlled substance and possession of drug paraphernalia charges) are remanded for new trial. Defendant is discharged in Nos. 20286, 20288, 20291 and 20293 (the violation of protective order charges).

MONTGOMERY, C.J., and SHRUM, J., concur.