

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| KENNETH CROCKER, | ) | No. ED102565 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. Richard K. Zerr |
| | ) | |
| Respondent. | ) | FILED: January 26, 2016 |

## Introduction

Appellant Kenneth Crocker ("Crocker") appeals from the judgment of the motion court denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. On appeal, Crocker contends the motion court clearly erred because he alleged facts showing that plea counsel rendered ineffective assistance by failing to call Dr. Richard Scott ("Dr. Scott') or Dr. Asfar Malik ("Dr. Malik") to testify about Crocker's mental history at Crocker's sentencing hearing, which Crocker maintains would have provided mitigating evidence. Because plea counsel's decision not to call Dr. Scott or Dr. Malik to testify was a reasonable strategic decision, we affirm the judgment of the motion court.

## Factual and Procedural History

Crocker was charged with one count of the class A felony of first-degree robbery stemming from the armed robbery of a jewelry store. On November 6, 2013, Crocker pleaded guilty to the charged offense. Crocker's written petition to enter a guilty plea noted that Crocker

had been treated for bipolar disorder, social anxiety disorder, chronic depression, and ADHD, and listed his current medications.

At the plea hearing, the trial court questioned Crocker to ensure that his guilty plea was knowing and voluntary. After extensive questioning, the trial court concluded that Crocker was pleading guilty knowingly and voluntarily. Crocker did not plead guilty pursuant to a plea agreement, and acknowledged that he understood the trial court would determine his sentence in its discretion. At the plea hearing, Crocker admitted that he committed the elements of the crime. The trial court accepted Crocker's guilty plea, found him guilty, and ordered a sentencing assessment report ("SAR") to be conducted prior to sentencing.

On December 18, 2013, Crocker appeared before the trial court for sentencing.[1] Crocker stated that he had no additions or corrections to make to the SAR. In the SAR, Crocker reported that he attended special education classes due to cognitive problems, behavioral issues, and ADHD. The SAR also indicated that Crocker received disability benefits due to his diagnoses of bipolar disorder, ADHD, and social anxiety disorder. Finally, Crocker reported in the SAR that he was under the care of a physician, had prior hospitalizations for mental health issues, and had been subjected to emotional abuse as a child.

Two of the victims of the robbery testified, and then Crocker testified on his own behalf. Crocker admitted he committed the robbery, but claimed he had used an unloaded BB gun. Crocker stated that he owed nearly $20,000 in restitution at the time of the robbery, and that his emotional state at the time was "[n]ot very good." Crocker also testified that he had a "drug problem" and had been using drugs since the age of thirteen, including steadily since 1999. Crocker testified that he had been diagnosed with social anxiety disorder, bipolar disorder, and

---

[1] At the time of the robbery, Crocker was on probation in two other cases. Crocker was sentenced in those two cases on the same day.

2

ADHD. Crocker further stated that he was not getting proper treatment for these conditions, but was instead "self-medicating" by smoking meth and doing bath salts, although he testified that he was not high at the time of the robbery. Crocker explained that his drug and mental issues were no excuse for his actions, stating "no matter what my state of mind or—or what I was going through, I had no right to do what I did, and I feel terrible for what happened." Crocker testified that if he was granted probation, he planned to seek substance abuse treatment and admitted that drugs were "absolutely" a problem in his life. Plea counsel then informed the trial court that he had Crocker's medical records in his possession in the event the trial court wished to view them.

Crocker's mother, Paula Tourville ("Tourville"), also testified. Tourville stated that she did not believe Crocker would have committed the crime if not for his drug use. Tourville testified that Crocker had never received treatment for drug or alcohol abuse, but had been "in and out of the hospital for mental problems." Tourville stated that when Crocker was twenty-five or twenty-six years old, "he started showing more bipolar symptoms," and that when he was thirty years old, he started "going in and out of the hospital" for treatment of his mental condition.

Plea counsel requested that the trial court sentence Crocker to probation. Plea counsel stated, "I believe it's clear that Mr. Crocker does have an alcohol and drug problem" which would "explain to some degree" why he committed the crime. Plea counsel also made the following argument:

> Certainly with the drugs and alcohol involved it warped his decision-making abilities. His mental condition had been diagnosed for some time by that time, and one of the things that he failed to mention, but—but kind of got to it in a roundabout way, is that Mr. Crocker has great difficulty, or did have great difficulty, interacting with other people unless he was on some kind of self-medicating … legal or illegal substance. And he had been doing that since he was fifteen.

3

The trial court sentenced Crocker to a total of seventeen years' imprisonment. The trial court noted that Crocker's actions were "reprehensible" and had a severe and lasting impact on the victims. The trial court also observed that Crocker had been granted probation on two other serious felony charges, but that had no impact on his conduct. The trial court opined that Crocker's need for money was a poor excuse for the "havoc and horror" he had caused. The trial court explained that its sentence was "on the bottom end of appropriate," and noted that it "could have certainly justified a larger sentence." The trial court explained, however, that it had chosen to give Crocker "some consideration" because he has a family and has issues with drug use.

The trial court then proceeded to ask Crocker if he had any complaints about plea counsel. Crocker stated that he was not fully and completely satisfied with the services rendered by plea counsel, and claimed that plea counsel did not investigate the case fully or discuss possible defenses with Crocker. Crocker further stated that plea counsel was "impossible" to get a hold of, and claimed that plea counsel "was supposed to get information from [Crocker's] doctors" but never did. For these reasons, Crocker stated that he felt plea counsel was "irresponsible." Upon further questioning, Crocker reiterated that, to his knowledge, plea counsel "didn't go and get medical records [or] talk to [his] doctors." Crocker stated, "I have three medical professionals that told me personally that it's absurd to get somebody with … my history of mental illness and problems … a prison sentence."

On March 6, 2014, Crocker timely filed a *pro se* Rule 24.035 motion for post-conviction relief. On March 11, 2014, the motion court appointed post-conviction counsel to represent Crocker. On March 28, 2014, the motion court granted Crocker an additional thirty days in which to file an amended motion. At that time a transcript of the guilty plea and sentencing proceedings had not yet been filed.

4

On July 15, 2014, transcripts of Crocker's guilty plea and sentencing hearing were filed. On October 14, 2014 Crocker timely filed an amended motion requesting an evidentiary hearing. The amended petition alleged that plea counsel was ineffective for failing to call Dr. Scott or Dr. Malik to testify about Crocker's mental history at the sentencing hearing. Crocker alleged that plea counsel had the medical records from these physicians, who "would have provided mitigating evidence about his chronic depression and anxiety, history of child abuse and inadequate care, antisocial conduct as a child ... and a 6-month stint at Division of Youth Services." Crocker alleged that but for plea counsel's ineffective assistance, "there is a reasonable probability the outcome of sentencing would have been different."

In support of his ineffective assistance claim, Crocker made the following allegations. First, Crocker alleged that despite being aware of Crocker's mental health history, plea counsel never discussed with Crocker the possibility of having Dr. Scott or Dr. Malik testify at sentencing to provide mitigation evidence about Crocker's mental health. Crocker further alleged that his medical records would show that Crocker was diagnosed with bipolar disorder in 2004 and had been hospitalized multiple times in the past. Crocker claimed that Dr. Malik would have testified that he evaluated and treated Crocker, and that he diagnosed Crocker with bipolar disorder, depression, ADHD, and generalized anxiety disorder. Crocker also alleged that Dr. Scott would have testified that there were "lots of mitigating facts" in Crocker's case given his mental health issues, and that Crocker suffers from chronic depression and anxiety, has a history of child abuse, and has potential undiagnosed ADD. Finally, Crocker's amended motion stated that Dr. Scott would testify "that [Crocker] was competent and responsible because the crime showed lots of planning and judgments such as removing [a] license plate, wearing [a] mask, plus [the] motive of paying restitution and getting out of [his] mother's house," in addition

5

to testifying that Crocker "has had many second chances through life and it probably makes him more dependent as a result."

On December 19, 2014, the motion court entered its findings of fact, conclusions of law, and order denying Crocker's request for an evidentiary hearing as well as his amended motion. The motion court concluded that Crocker failed to allege facts proving that plea counsel's decision not to call Dr. Scott or Dr. Malik to testify was unreasonable, and failed to allege facts proving that Crocker was prejudiced thereby.

First, the motion court concluded that Crocker failed to show that plea counsel's actions were unreasonable. The motion court noted that Crocker conceded that Dr. Scott would testify that Crocker was competent and responsible for the crime due to the amount of planning and judgment involved, and that Dr. Scott would opine that Crocker has had many second chances, which have made him more dependent as a result. The motion court reasoned that plea counsel, who was in possession of Crocker's medical records, may have strategically wished to prevent the trial court from hearing such potentially aggravating evidence. As a result, the motion court concluded that the danger of having Crocker's "mitigating witness turned into the State's sentencing witness is a danger plea counsel could reasonably choose to avoid," particularly when plea counsel had already presented the same mitigating evidence through the testimony of Crocker himself and his family.

The motion court noted that Crocker's mental health issues, including prior hospitalizations, and specific psychiatric diagnoses were set forth in detail in the SAR. The motion court also observed that the SAR contained information that Crocker had been emotionally abused as a child and had spent time in the Division of Youth Services, and pointed out that Crocker's mental health issues and diagnoses were specified in his petition to enter a

6

guilty plea. In addition, the motion court mentioned Crocker's own testimony during the sentencing hearing, in which he testified to "his diagnoses of social anxiety disorder, bipolar disorder, [and] ADHD as well as his drug problems," as well as his mother's testimony to the same effect. Finally, the motion court observed that plea counsel himself "effectively argued the drug and alcohol history of [Crocker] as well as the mental health diagnoses for which he was receiving treatment." As a result of these findings, the motion court concluded that Crocker failed to show that plea counsel was ineffective or unreasonable in choosing not to call Dr. Scott or Dr. Malik as witnesses during the sentencing hearing. The motion court concluded that because the SAR, Crocker's testimony, and Tourville's testimony "demonstrated the psychiatric diagnoses and difficulties of [Crocker] throughout his life," any further evidence of Crocker's mental health diagnoses "would be cumulative to testimony already admitted into evidence." The motion court additionally found that Crocker acknowledged that the content of Dr. Scott and Dr. Malik's expected testimony "could have resulted in aggravating sentencing evidence being adduced by the State on cross examination ... [a] danger any counsel may soundly wish to avoid."

Second, the motion court concluded that Crocker failed to show he suffered any prejudice as a result of plea counsel's actions. The motion court reasoned that the trial court, in making its sentencing decision, "accept[ed] the evidence, including psychiatric diagnoses, offered by Crocker and his mother as mitigating evidence," as shown by the trial court's statement that a longer prison sentence was justified based upon the crimes committed, but that consideration was given to Crocker due to his family and drug use issues. As a result, the motion court found that "[t]he evidence presented supplied the court with knowledge of [Crocker's] mental health diagnoses and drug use as well as his family situation ... [a]ll of which was considered by the

7

court together with [Crocker's] criminal history and the facts and circumstances surrounding [Crocker's] calculated and well planned commission of an armed robbery of a jewelry store." Accordingly, the motion court denied Crocker's amended motion without an evidentiary hearing. This appeal follows.

## Point on Appeal

In his sole point on appeal, Crocker contends the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing because he alleged facts showing that he was denied his right to effective assistance of counsel. Specifically, Crocker avers that plea counsel was ineffective for failing to call Dr. Scott or Dr. Malik to testify about Crocker's mental history, which would have provided mitigating evidence about his chronic depression and anxiety, history of child abuse and inadequate care, antisocial conduct as a child, and a six-month stint at Division of Youth Services. Crocker claims that but for plea counsel's failure to present the above expert testimony as mitigating evidence, the outcome of Crocker's sentencing would have been different.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 24.035; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

To be entitled to an evidentiary hearing on a post-conviction relief claim, a movant must allege facts, not conclusions, that, if true, would warrant relief; the facts alleged must raise

8

matters not refuted by the record and files in the case; and the matters complained of must have resulted in prejudice to the movant. Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003). An evidentiary hearing is not required if the files and records of the case conclusively show that the movant is entitled to no relief. Id.

## Discussion

### I. Timeliness of Amended Motion

As a threshold matter, we address Crocker's contention that the amended motion was untimely filed and may need to be remanded for an abandonment inquiry pursuant to Moore v. State, 458 S.W.3d 822 (Mo. banc 2015). We find that the amended motion was timely filed and thus remand is not required. Rule 24.035(g) requires, in relevant part, that an amended motion be filed

> [W]ithin sixty days of the earlier of: (1) *the date both a complete transcript consisting of the guilty plea and sentencing hearing has been filed in the trial court and counsel is appointed* or (2) the date both a complete transcript has been filed in the trial court and an entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant.

Rule 24.035(g) (emphasis added). Here, post-conviction counsel was appointed to represent Crocker on March 11, 2014, but the transcript of Crocker's guilty plea and sentencing hearing was not filed until July 15, 2014. As a result, the initial sixty-day deadline for filing the amended motion was Monday, September 15, 2014.[2] Adding the thirty-day extension of time which the motion court had previously granted to Crocker produces a deadline of October 15, 2014. Crocker filed his amended motion on October 14, 2014; thus, the amended motion was timely.

---

[2] Sixty days from July 15, 2014, was September 13, 2014. However, because September 13, 2014, fell on a Saturday, the deadline for filing the amended motion was the following Monday, September 15, 2014, in accordance with Rule 44.01(a).

9

## II. Plea Counsel's Performance

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To satisfy the performance prong of the Strickland test, a movant must overcome the strong presumption that any challenged action was sound legal strategy. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). To overcome this presumption, a movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id. To satisfy the prejudice prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. When a movant challenges counsel's effectiveness at sentencing, the movant must prove that but for counsel's alleged error, there is a reasonable probability that the sentence would have been shorter. Cherco v. State, 309 S.W.3d 819, 829-30 (Mo. App. W.D. 2010).

A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. Sanders, 738 S.W.2d at 857. In reviewing such a claim, we are not required to consider both prongs; if the movant fails to satisfy one prong, we need not consider the other. Id.

There is a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a result, Crocker bears a heavy burden in attempting to satisfy the first prong of the Strickland test. In order to do so, Crocker must overcome the strong presumption that trial counsel provided competent

10

representation and that trial counsel's conduct was reasonable and effective. Worthington v. State, 166 S.W.3d 566, 573 (Mo. banc 2005). Missouri courts have consistently held that "[r]easonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006). In fact, "strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." Id. As a result, defense counsel is afforded "wide discretion in determining what strategy to use in defending his or her client." Stevens v. State, 353 S.W.3d 425, 431 (Mo. App. S.D. 2011).

The motion court concluded that plea counsel's decision not to call Dr. Scott or Dr. Malik as witnesses was a reasonable strategic decision for two reasons: first, their testimony would have been cumulative to the testimony already admitted into evidence regarding Crocker's mental health issues; and second, their testimony could have allowed the State to adduce aggravating sentencing evidence from them on cross examination. We agree.

Missouri case law is clear that "[c]ounsel does not render ineffective assistance by failing to present cumulative evidence." State v. Nunley, 923 S.W.2d 911, 924 (Mo. banc 1996); State v. Harris, 870 S.W.2d 798, 815 (Mo. banc 1994). Here, substantial mitigating evidence was introduced at the sentencing hearing regarding precisely the same information Dr. Scott and Dr. Malik would have testified about if called as witnesses. Between Crocker's written petition to plead guilty, the SAR, Crocker's testimony, and Tourville's testimony, extensive evidence was presented to the trial court detailing Crocker's mental health diagnoses and attendant social issues, drug use, family life, and time spent at the Division of Youth Services. The trial court even referenced this evidence in explaining why it chose to impose a prison sentence "on the bottom end of appropriate" despite the seriousness of Crocker's crime. Because extensive

11

evidence regarding Crocker's mental health history, including his psychiatric diagnoses, family issues, antisocial conduct, and stint at the Division of Youth Services was already before the trial court, any testimony by Dr. Scott or Dr. Malik as to these same issues would have been cumulative. We are not persuaded that direct testimony from Crocker's health care providers would have enhanced the evidence of Crocker's mental health history already before the trial court in any meaningful way. Plea counsel was not ineffective for failing to call Dr. Scott and Dr. Malik as witnesses solely for the purpose of presenting cumulative evidence.

Further, Missouri law is equally clear that a decision *not* to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. Robinson v. State, 469 S.W.3d 871, 880 (Mo. App. E.D. 2015). More specifically, "[w]hen defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." Id. at 881. Here, by Crocker's own admission, Dr. Scott would have testified that Crocker was competent and responsible for the crime due to the amount of planning and judgment involved, and that that Crocker has had many second chances which have made him "more dependent" as a result. Plea counsel acted reasonably by relying on the evidence already before the trial court, and strategically not calling Dr. Scott, whose testimony would have provided aggravating, rather than mitigating, evidence. Further, it was reasonable for plea counsel to decline to call either doctor as a witness in favor of presenting the same mitigating evidence in a different manner. Plea counsel chose to introduce the mitigating evidence regarding Crocker's mental health, drug use, and family life by way of direct testimony from Crocker and Tourville, as well as supporting documents including the SAR and petition to plead

12

guilty. Crocker has failed to allege any facts sufficient to overcome the presumption that this decision was a reasonable strategy.

Plea counsel was not ineffective for failing to call Dr. Scott or Dr. Malik to testify as their testimony would have been cumulative to the mitigating evidence already introduced, and because their testimony potentially could have introduced affirmatively aggravating evidence adverse to Crocker's position. Crocker has failed to allege any facts indicating that plea counsel acted unreasonably or that Crocker is entitled to relief on his ineffective assistance of counsel claim. Because Crocker failed to satisfy the performance prong of the Strickland test, we need not consider the prejudice prong. Sanders, 738 S.W.2d at 857. Point denied.

### Conclusion

The judgment of the motion court denying Crocker's Rule 24.035 motion for post-conviction relief without an evidentiary hearing is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa Van Amburg, C.J., concurs.

13