**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Donald PLACKE, Jr.,
Defendant-Appellant.**

No. 51907.

Missouri Court of Appeals,
Eastern District,
Division One.

July 28, 1987.

Bernard Edelman, Clayton, for defendant-appellant.

Jeffrey Scott Jamieson, Anthony P. Gonzales, Asst. Circuit Attys., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Donald Placke appeals from a conviction of harassment in violation of § 565.090

RSMo 1978 in a jury waived trial. Appellant was sentenced to ten days imprisonment, however, the execution of the sentence was suspended and appellant was placed on unsupervised probation for a period of one year. We affirm.

The record reveals that James Scheetz, the victim, testified at trial that on November 1, 1985, he owned a telephone answering machine. He further testified that on November 1, 1985, he left his home to go out on a date with appellant's former wife. He returned to his home the next day at approximately 4:30 p.m., and subsequently checked his recorder for messages. There were four calls recorded on the cassette tape. The calls were as follows:

1. Tone indicating new message: "I like killing people and killing more people (inaudible) but mostly killing people. That's (inaudible)."

2. Tone indicating new message: "Hey Jim Shoes, have you seen the movie 'Rambo'? Its got a good subtitle. It's really (inaudible). What are you going to do with (inaudible)."

3. Tone indicating new message: "Jim Shoes, if you see a car door open and something with a long end on it pointed at you, duck. It could save your life."

4. Tone indicating new message: "Hey, man, I'm not jealous. Nothing against you at all. But make sure that you keep away from a little bitty girl then I might. You know me."

Scheetz played these calls in one continuous period. He testified that there were four separate calls on the tape as opposed to one continuous call. The calls lasted approximately 30 seconds.

Scheetz identified the voice of the caller as that of the appellant. Scheetz had been acquainted with the appellant for approximately ten years, and testified that he had not had any problems with appellant in the past. Scheetz was, however, dating appellant's former wife.

Susan Winter, a friend of appellant's former wife, testified that she had received a phone call from appellant on November 2, 1985, wherein he stated, "I will kill and maim you."

Maureen Krabbe, appellant's former mother-in-law, testified that she had also received a phone call on November 2, 1985, between 4:00 a.m. and 5:00 a.m., wherein appellant stated, "You've got to be out of your G-damn mind."

John Kavadas, a police officer for the City of St. Louis, testified that on November 7, 1985, Scheetz gave him a cassette tape which contained four harassing telephone calls. He identified the cassette tape which was played in court as that of the tape which he had received from Scheetz.

At the close of the state's evidence, appellant made a motion for a directed verdict. After appellant's motion for directed verdict was overruled, appellant took the stand. Appellant denied calling Susan Winter, Maureen Krabbe, and James Scheetz. Appellant testified that he had spoken with Scheetz several times in the past, but did not recall any telephone calls between them. At the close of evidence, appellant's motion for judgment of acquittal was overruled, and the court found appellant guilty of harassment.

Appellant contends the trial court erred by overruling his motion for judgment of acquittal because the state did not prove that appellant made repeated harassing telephone calls for the purpose of disturbing the victim. Appellant also asserts that the trial court erred by allowing two witnesses to testify as to phone calls they received from appellant as those calls constituted proof of other crimes.

Initially, we will address appellant's contention that the trial court erred in failing to sustain appellant's motion for judgment of acquittal because the evidence was insufficient to support a conviction of harassment.

A person commits the crime of harassment, if, for the purpose of frightening or disturbing another person, he:

(2) [m]akes a telephone call or communication in writing and uses coarse lan-

guage offensive to one of average sensibility; or

(3) [m]akes a telephone call anonymously; or

(4) [m]akes repeated telephone calls.

Section 565.090 RSMo 1978.

■ The sufficiency of the evidence is determined by the same standard in a court-tried case as in a jury-tried case. *State v. Koetting*, 691 S.W.2d 328, 329 [1] (Mo.App.1985). In reviewing the sufficiency of the evidence to support the conviction, the reviewing court must accept as true all evidence, direct and circumstantial, together with all reasonable inferences that support the judgment, and disregard all contrary evidence and inferences. *Id.* at 330 [1]. The appellate court may not weigh the evidence and may review the record only to determine whether there was sufficient evidence from which the trier of fact could reasonably have found the defendant guilty as charged. *Id.* at 329–330 [1].

Appellant points out several reasons to support his assertion that all of the essential elements of § 565.090 RSMo 1978 were not established, and therefore, appellant's conviction cannot stand. Appellant alleges that:

1. No call was made directly from the appellant to the victim, as the call was made to a tape recorder and the victim played the calls upon returning to his home;

2. There was no evidence that the calls were directed to the victim, only that the victim played the tape and listened to the calls;

3. The victim was not home when the calls were received, and thus the caller could only speculate as to whether the victim actually received the call; and

4. There was no showing of "repeated" calls.

We will discuss each of appellant's contentions in turn.

■ We are not persuaded by appellant's argument that one cannot be convicted of making harassing telephone calls where the calls were made to an answering machine rather than directly to the victim. A caller who leaves a message on an answering machine intends that the owner of the machine will receive his message. The very purpose of an answering machine is to ensure that the owner will receive all messages communicated to him throughout the day.

In the instant case, it is apparent that appellant intended to communicate four threatening messages to Scheetz. Scheetz was obviously disturbed by appellant's phone calls, because after listening to his messages he called the police. The fact that the calls were recorded on tape has no less disturbing impact on the victim than had appellant spoken with him personally. We find that harassing phone calls made directly to an individual's telephone answering machine falls within the purview of § 565.090 RSMo 1978.

■ Appellant next contends that there was no evidence that the calls were directed at Scheetz. However, the record indicates that Scheetz owned the machine, and in two of the four messages appellant began the calls by addressing "Jim Shoes", which can easily be construed as Jim Scheetz. Accordingly, appellant's contention is without merit.

■ Thirdly, appellant contends that he did not know whether his message would be received by Scheetz. Scheetz testified that the outgoing tape asking the caller to leave a message contains the following words:

"Hi, this is Jim. I can't come to the phone right now, but if you'd like to leave your name and number, do so when you hear the beep. Thanks a lot."

Here, Scheetz asked the caller to leave a message so he could return the call. This point is also denied.

■ Finally, appellant contends that the calls were not "repeated". Appellant relies on *United States v. Darsey*, 342 F.Supp. 311 (1972). In *Darsey*, appellant was unable to get through to the victim's answering service. Appellant would then call back a few minutes later until he reached the victim. All of the calls taken by the

answering service were routine in context, and many were handled by an operator as an intermediary. The court held that the state failed to prove that the calls were "repeated". The court went on to say, "The relevant consideration is not how many times Mr. Darsey dialed, or how many times he spoke to an answering service, but how many times he imposed upon Mrs. Rex. In the context of this case, this Court does not consider the calls completed until defendant actually got through to Mrs. Rex."

*Darsey* is easily distinguishable from the case at bar. In *Darsey*, appellant continued to *attempt* to reach the victim via an answering service, where the calls were handled by an operator. In the instant case, appellant *did* reach the victim—as appellant left four separate messages on Scheetz's answering machine for him to personally receive when he returned to his home.

While there are no Missouri cases directly on point, the Supreme Court of South Dakota in *State v. Diede*, 319 N.W.2d 818, 821[1] (1982), held that the word "repeated" as used in their criminal statute relating to telephone harassment means merely more than one call. The court went on to say, "The legislature clearly intended that one call would not be sufficient to constitute a violation under the statute, and by using the word 'repeated' obviously intended that the offense could be committed by the making of two or more calls." South Dakota's Statute SDCL 49–31–31 is similar to Missouri's Statute § 565.090 RSMo 1978. Both require for a conviction that the state prove beyond a reasonable doubt that a caller intended to disturb another person by repeated or anonymous telephone calls. Analogous to the court in *State v. Diede, supra,* we believe that the legislature intended that telephone harassment could be committed by the making of two or more calls. Therefore, we conclude that the four separate calls on the tape constitutes "repeated" calls.

■ We next consider whether the trial court erred in admitting the testimony of appellant's former wife's friend and appel-

lant's former mother-in-law as to phone calls they received from appellant on the same evening that appellant called Scheetz. Appellant contends this testimony was proof of other crimes and was therefore inadmissible. We disagree.

The evidence of uncharged crimes is admissible when it tends to establish motive, intent, absence of mistake or accident, *common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other,* or the identity of defendant. (emphasis added). *State v. Kenley,* 693 S.W.2d 79, 81[2] (Mo. banc 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986). If the evidence is relevant, it is not rejected merely because it incidentally proves the defendant guilty of another crime. *State v. Mudd,* 703 S.W.2d 63, 65[1] (Mo.App.1985).

In the instant case, the calls to appellant's former wife's friend and former mother-in-law were admissible under the common scheme or plan exception. This evidence established the continuing harassing conduct by appellant, because both witnesses were called on the same evening that appellant called Scheetz. Since the evidence established that appellant had also harassed two other people on the night in question, the admission of the evidence was proper.

The judgment of the trial court is affirmed.

SATZ, P.J., and CRIST, J., concur.