**STATE of Missouri, Respondent,**

v.

**Clarence CREECH, Defendant–Appellant.**

**No. 73451.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 15, 1998.

James L. Spradlin, Asst. Pros. Atty., Troy, for respondent.

ROBERT G. DOWD, Jr., Chief Judge.

Defendant appeals from the judgment of conviction and fifty dollar ($50) fine for the misdemeanor crime of telephone harassment under Section 565.090, RSMo 1994. Section 565.090.1(4) makes it a crime to make repeated telephone calls for the purpose of frightening or disturbing another person. Defendant was charged with making repeated telephone calls to M.B. between May 1 and June 5, 1997, for the purpose of frightening or disturbing her. The State does not contest the conclusion there was no evidence to support a finding of intent to frighten. Defendant contends the trial court erred because the State failed to show evidence to support a finding that Defendant made repeated phone calls with the purpose to disturb. We affirm.

The evidence in a jury-waived case is reviewed by the same standard as in a jury-tried case. State v. Koetting, 691 S.W.2d 328, 329 (Mo.App. E.D.1985). We are not to weigh the evidence, but to determine whether there was sufficient evidence from which the trier of fact could reasonably have found the Defendant guilty as charged. Id. We accept as true all evidence, direct and circumstantial, and all reasonable inferences supportive of the judgment, disregarding the contrary evidence. Id.

The facts in the light most favorable to the verdict are as follows. Defendant began to call M.B. and called her approximately thirteen times. Approximately six of those calls occurred between May 1 and June 5, 1997, the time period charged. M.B. was fourteen years old at the time these conversations occurred.[1] During these telephone conversations, Defendant would ask M.B. if she would have sex with him. M.B. testified that Defendant would bring up the topic of sex "about every time we talked." When Defendant made references to sex, M.B. would respond in one of three ways: (1) she would hang up the phone; (2) tell Defendant that she had to go; or (3) respond in the negative. On May 28, 1997, M.B. complained

Charlie James, Shelly C. Buff, Wentzville, for appellant.

---

1. The record does not indicate Defendant's age, but we can assume he was several years older than M.B. from the evidence that Defendant was employed at Imo's Pizza.

to her father about Defendant's calls. M.B. testified she told her father about the calls because "it started to annoy me." M.B. further testified she made a prior statement saying she was frightened of Defendant. Defendant called again to speak with M.B. and her father told him never to call their house again. When Defendant did call again, M.B. and her father went to the sheriff's department and filed a complaint. M.B. wrote and signed a statement at the sheriff's department. M.B.'s statement was offered as State's Exhibit 1 and received into evidence at trial. Defendant did not file this exhibit with this court. It is Defendant's responsibility to see that a complete record is filed. Rule 30.04; *State v. McClain*, 602 S.W.2d 458, 459 (Mo.App. E.D.1980). When an exhibit is omitted from the transcript and is not filed with the appellate court, the intendment and content of the exhibit will be taken as favorable to the trial court's ruling and as unfavorable to Defendant. *Gage v. Morse*, 933 S.W.2d 410, 424 (Mo.App. S.D. 1996).

■ The sole issue is whether the State offered evidence to support a finding of intent to disturb. Section 565.090 requires a specific intent on the defendant's part to frighten or disturb another. *State v. Rafaeli*, 905 S.W.2d 516, 518 (Mo.App. E.D.1995). A caller's intent to disturb need not be his or her sole intent in making repeated phone calls, only one of his or her purposes. *Id.* Intent is a state of mind and is usually not susceptible to direct proof; therefore, intent is generally established by circumstantial evidence. *Id.*

■ Based on our standard of review, we find sufficient evidence from which the trier of fact could reasonably infer from these facts that Defendant intended to disturb M.B. by his calls and references to sex. Whenever Defendant brought up the topic of sex, M.B. would respond in a negative manner. M.B. would hang up, tell Defendant she had to go, or tell him "No." Defendant continued to call M.B. and discuss having sex despite her repeated negative responses. Defendant knew that M.B. did not want to have sex with him or even talk about sex, yet he attempted to discuss the topic almost every time they spoke. Ultimately, M.B. complained to her father about the calls because she was annoyed. M.B.'s father told Defendant not to call again, but Defendant did call again. The trier of fact could logically infer that unless Defendant intended to disturb M.B., he would have stopped calling M.B. and requesting sex after she repeatedly hung up on him.

■ Defendant argues the calls were not repeated because he only made one call after he was told not to call by M.B.'s father. We disagree. Defendant cites *State v. Placke*, 733 S.W.2d 847 (Mo.App. E.D.1987) in support of his contention. In *Placke*, this court concluded that telephone harassment by making repeated calls could only be committed by the making of two or more calls. *Id.* at 850. In *Placke*, we held that four separate calls on an answering machine tape constituted repeated calls. *Id.* There is nothing in *Placke* to indicate that a caller must be told to stop calling before the count for "repeated" calls begins. Defendant made six calls to M.B. in the time period charged. This meets the two or more test for repeated calls. We do not agree that the State needs to establish that the victim told the caller to stop calling in order to prove intent to disturb by making repeated telephone calls. *See State v. Mallory*, 886 S.W.2d 89, 91 (Mo. App. W.D.1994).

We understand the necessity to avoid criminalizing actions arising from the normal risks of daily human interaction such as those resulting from family or relationship squabbles. However, we believe the case at hand falls outside the scope of these normal risks. This is not a case of boyfriend-girlfriend petulance, but instead the harassment of a young adolescent girl by repeated requests of her to have sex with Defendant, despite the fact she repeatedly hung up on him when he broached the topic.

Under our limited review, we find these facts and their reasonable inference support a finding of the requisite intent to disturb by making repeated phone calls. Accordingly, Defendant's contention is without merit.

We affirm.

KAROHL, J., dissents.

CRIST, Senior Judge, concurs.

KAROHL, Judge, dissenting.

I respectfully dissent.

The evidence in the present case was insufficient to support a finding that Defendant had a specific intent to disturb when he called M.B. There is no issue regarding the failure to prove intent to frighten. The State only contends it offered evidence to support finding intent to disturb.

The majority opinion depends upon a conclusion, "The trier of fact could logically infer that unless Defendant intended to disturb M.B., he would have stopped calling M.B. and requesting sex after she repeatedly hung up on him." All of the evidence was offered by State's witnesses, M.B. and her father. She testified that she was a friend of Defendant and remained his friend. He telephoned her thirteen times during a three year period and "maybe about six" times in May of 1997. The last telephone call was made on May 28, 1997, after M.B.'s father told Defendant not to call. The availability of an inference depends upon the undisputed facts from State's witnesses that the majority opinion fails to consider. An available inference regarding a telephone call from a stranger is not equally available regarding a telephone call from a friend where the prohibited conduct is a telephone call made with the intent to disturb.

M.B. never testified that she was disturbed. After receiving telephone calls for a period of three years, she told her father about the calls, "because it started to annoy me." There is a substantive difference between conduct that is intended to annoy and conduct which is intended to disturb. The criminal statute does not define a crime based upon conduct that may annoy. If it did, it may be authority to prosecute solicitors and salesmen. The statute does not criminalize such conduct.

The majority opinion says M.B. testified she made a prior statement saying she was frightened by Defendant. M.B. testified to the contrary on various occasions during the trial. M.B. concluded Defendant never meant to bother her in terms of frightening, scaring, or being mean to her and she had no reason to conclude that was his intention at all. Her testimony provided no evidence to support a finding Defendant made telephone calls with the intent to frighten or disturb. Father testified and "guessed" his daughter spoke to him about Defendant's calls on May 20 or 25. Thereafter, he waited until Defendant called his home and told Defendant he was "a jealous husband" and to "stop coming by and quit calling." Defendant made the last telephone call on May 28.

The majority alludes to State's Exhibit 1, which was received in evidence without objection. M.B. testified that she wrote State's Exhibit 1 and signed it. It was a statement she made to the sheriff's department. The majority suggests that the failure of Defendant to present Exhibit 1 to this court for review bars any favorable consideration of his claim the State failed to make a submissible case. The State has not argued that there is any direct or circumstantial evidence in the exhibit that would support any element of the charged offense. On the contrary, it argues that circumstantial evidence contained on the record indicated that Defendant did disturb M.B. It relies on: (1) six calls between May 1 and June 5 [1]; (2) Defendant's conduct in talking to and asking her to have sex with him; (3) her statement that she would usually hang-up; (4) her eventual statement to her father about the calls for the stated reason that it started to annoy her; and (5) father's admonition not to call again, followed by one additional call. That is the only evidence relied upon by the State. It has not relied upon an unsworn, handwritten statement of M.B. given to the sheriff's department. On these facts, particularly where the author of the exhibit testified for the State, the intendment and content of the exhibit may not be taken as favorable to the judgment and unfavorable to Defendant.

The evidence, taken in a light most favorable to the finding Defendant called with the intent to disturb, must be considered in the context of the State's evidence, particularly:

1. There were no calls after May 28.

(1) thirteen phone calls in three years by a friend to a friend; (2) a conclusion by M.B. that the calls were not made with the intent to frighten or disturb; (3) M.B.'s testimony she was not disturbed; (4) M.B.'s testimony that she told her father the calls were beginning to annoy her, but no statement regarding frighten or disturb. The State's complete reliance upon submissibility of the charge on circumstantial evidence opposes an appellate court presumption that a written document would offer direct evidence of any element of the charged crime.

If the legislature intended to create a misdemeanor crime for making phone calls with intent to annoy, then it failed in its purpose. It is more reasonable to assume that it accomplished its purpose by criminalizing phone calls made with the intent to frighten or to disturb, without including annoying phone calls. It is unreasonable to assume that a telephone solicitor making numerous annoying phone calls is violating Section 565.090.1(4) RSMo 1994.