

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| MEGAN L. HENDRICKS, | ) | No. ED110418 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 1911-CC00771 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Respondent. | ) | FILED: February 21, 2023 |

## Introduction

Megan L. Hendricks (Movant) appeals from the motion court's Findings of Fact, Conclusions of Law and Judgment denying her amended Rule 24.035[1] post-conviction motion after an evidentiary hearing. On appeal, Movant contends the motion court erred in denying her motion because she proved she received ineffective assistance of counsel before her plea and at sentencing, which rendered her guilty plea unknowing and involuntary and resulted in a longer sentence. Finding no clear error, we affirm.

## Factual and Procedural Background

Movant seeks relief from her conviction and sentence for child abuse/neglect resulting in death, based on the 2016 death of Movant's six-week-old child (Victim). This conviction was based on Movant knowingly keeping Victim in the care, custody, and control of her boyfriend /

---

[1] All rule references are to the Missouri Supreme Court Rules (2019).

Victim's father (Father), despite having witnessed Father physically abuse Victim on multiple occasions.

In 2018, Movant entered an open guilty plea[2] to one count of child abuse/neglect resulting in death. At the plea hearing, Movant stated that she observed: Father violently shake Victim more than two or three times; Father "slamming" Victim two or three times (i.e. throwing Victim on the bed); and Father shoving his fingers down Victim's throat. Movant confirmed that Victim suffered 38 fractures and a deprivation of oxygen as a result of Father's actions. Movant admitted that, by allowing Victim to be in the care, custody, and control of Father, and by Movant being present while the abuse occurred, Movant allowed Victim to suffer serious injury that resulted in his death. Before accepting Movant's guilty plea, the court found that Movant's plea was knowingly, intelligently, and voluntarily made, and that there was a factual basis for the plea. The court ordered a Sentencing Assessment Report and a sentencing hearing took place in early 2019, at which the lead detective and Movant testified. The court ultimately sentenced Movant to twenty-one years in the Missouri Department of Corrections. Movant was represented by Counsel throughout the investigation of the case and plea and sentencing proceedings.

Movant timely filed a *pro se* post-conviction motion under Rule 24.035 to vacate, set aside, or correct the judgment and sentence. Appointed counsel timely filed an amended motion alleging that Counsel was ineffective for: failing to investigate an alternative cause of Victim's death and, accordingly, interview an expert witness; failing to call Movant's former roommate to provide mitigation testimony at sentencing; failing to obtain Movant's high school counseling records and present this mitigating evidence at sentencing; and failing to object to the lead

---

[2] An "open" or "blind" guilty plea is a plea made not pursuant to an agreement with the State as to punishment, meaning that the defendant may receive any lawful sentence. See Routt v. State (Routt II), 535 S.W.3d 812, 814 n.4 (Mo. App. E.D. 2017).

2

detective's hearsay testimony at sentencing. The motion court held an evidentiary hearing on these claims at which Movant, Counsel, a forensic pathologist, and Movant's former roommate testified. After taking the motion under advisement, the motion court[3] denied all the claims in Movant's amended motion. This appeal follows.

Additional facts relevant to each of Movant's points on appeal will be included, as needed, in our discussion below.

## Standard of Review[4]

We review the denial of a Rule 24.035 post-conviction motion for whether the motion court's findings and conclusions are "clearly erroneous." Rule 24.035(k); see also Routt v. State (Routt II), 535 S.W.3d 812, 817 (Mo. App. E.D. 2017) (citing Rule 24.035(k) and Weeks v. State, 140 S.W.3d 39, 44 (Mo. banc 2004)). Clear error occurs when a review of the entire record leaves this Court "with the definite and firm impression that a mistake has been made." Routt II, 535 S.W.3d at 817 (citing Brooks v. State, 242 S.W.3d 705, 708 (Mo. banc 2008)). We presume the motion court's findings are correct. Lusk v. State, 655 S.W.3d 230, 233 (Mo. App. E.D. 2022) (citing James v. State, 462 S.W.3d 891, 893 (Mo. App. E.D. 2015)).

## Discussion

In her four points on appeal, Movant challenges the motion court's denial of her post-conviction claims, all of which alleged that Counsel rendered ineffective assistance. Movant's first point complains of Counsel's failure to adequately investigate an alternative cause of Victim's death, which Movant argues rendered her guilty plea unknowing and unintelligent. In

---

[3] The motion court judge was the same judge who presided over Movant's plea and sentencing.
[4] Some cases cited in this memorandum arise from post-conviction motions filed pursuant to Rule 29.15 as opposed to Rule 24.035. We rely on these cases only where the rules are identical, as "case law interpreting a provision that is identical in both rules applies equally in proceedings under either rule." Propst v. State, 535 S.W.3d 733, 735 n.4 (Mo. banc 2017) (quoting Vogl v. State, 437 S.W.3d 218, 224 n.7 (Mo. banc 2014)).

her remaining three points, Movant challenges Counsel's conduct regarding her sentencing hearing, namely: Counsel's failure to present mitigating testimony from Movant's former roommate; Counsel's failure to obtain and present mitigating evidence in the form of Movant's high school counseling records; and Counsel's failure to object to hearsay testimony from the lead detective. We conclude that none of Movant's points on appeal are meritorious and we therefore affirm the motion court's denial of her post-conviction claims.[5]

<u>Ineffective Assistance of Counsel Surrounding Guilty Plea (Point I)</u>

In her first point on appeal, Movant argues the motion court clearly erred in denying her claim that she was prejudiced by Counsel's ineffectiveness in failing to investigate and present testimony supporting an alternative cause of Victim's death. According to Movant, Counsel's failure to investigate an expert opinion regarding an alternative cause of Victim's death rendered Movant's guilty plea unknowing and involuntary. We disagree.

To establish ineffective assistance of counsel, a movant must meet the two-prong test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). <u>See</u> <u>id.</u> at 234 (citing <u>Davis v. State</u>, 486 S.W.3d 898, 905–06 (Mo. banc 2016)). Under <u>Strickland</u>, a movant must show: (1) counsel's performance was deficient in that counsel failed to exercise the level of skill, care, and diligence that reasonably competent counsel would exercise in a similar situation; and (2) that failure prejudiced movant. <u>Id.</u> (citing <u>Davis</u>, 486 S.W.3d at 905–06). To satisfy the performance prong, a movant must overcome the "strong presumption" that counsel's conduct was reasonable

---

[5] Movant's motion to strike the State's brief was ordered taken with the case. In this motion, Movant argues that the State's brief, or at a minimum the relevant portion thereof, should be stricken due to the State's citation to and reliance on this Court's 2022 unpublished memorandum explaining the basis for this Court's decision affirming the denial of Father's post-conviction motion. Rule 84.16 states in relevant part that "[a] written statement … attached to the memorandum decision or written order setting out the basis for the court's decision … shall not constitute a formal opinion of the court, shall not be reported, and ***shall not be cited or otherwise used in any case before any court***." Rule 84.16(b). Although the information Movant seeks to strike is unnecessary to our analysis and disposition of her appeal, we grant in part Movant's motion and order stricken the offending portion of the State's brief: footnote 3 on pages 32 and 33.

4

and effective. Id. (citing Davis, 486 S.W.3d at 906). To satisfy the prejudice prong, a movant must demonstrate that a reasonable probability exists that, but for counsel's deficient performance, the movant would not have pleaded guilty and would have instead proceeded to trial. Id. (citing Rice v. State, 550 S.W.3d 565, 569 (Mo. App. E.D. 2018)). "If the movant fails to satisfy either the performance prong or the prejudice prong, we need not consider the other." Id. (quoting Farr v. State, 408 S.W.3d 320, 322 (Mo. App. E.D. 2013)).

In a claim arising from a guilty plea, an allegation of ineffective assistance of counsel is immaterial except to the extent that the complained-of conduct affected the voluntariness of and knowledge with which the plea was made. Id. (citing Rice, 550 S.W.3d at 569). A movant must prove any claim of ineffective assistance of counsel by a preponderance of the evidence. Id. at 233 (citing Rule 24.035(i)).

*The motion court did not clearly err in denying the claim that Counsel was ineffective for failing to investigate an alternative cause of Victim's death*

The motion court did not clearly err in denying Movant's claim because, under the circumstances here, Counsel's conduct was reasonable and therefore did not constitute deficient performance necessary to prove ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel grounded in an allegedly inadequate investigation, a movant must specifically describe the information counsel failed to discover, allege that a reasonable investigation would have resulted in the information's discovery, and prove that the information would have aided or improved the movant's position. Washington v. State, 598 S.W.3d 656, 671 (Mo. App. E.D. 2020) (quoting Hendrix v. State, 473 S.W.3d 144, 148 (Mo. App. W.D. 2015)).

We focus our discussion on whether Counsel's level of investigation was reasonable. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that

5

makes particular investigations unnecessary." Dorsey v. State, 448 S.W.3d 276, 291 (Mo. banc 2014) (quoting Strickland, 466 U.S. at 691). We assess reasonableness under "all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Gray v. State, 108 S.W.3d 86, 88–89 (Mo. App. S.D. 2003) (quoting Ervin v. State, 80 S.W.3d 817, 824 (Mo. banc 2002)). We are mindful that the duty to investigate does not require counsel "to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Strong v. State, 263 S.W.3d 636, 652 (Mo. banc 2008) (quoting Rompilla v. Beard, 545 U.S. 374, 383 (2005)). "Judicial scrutiny of counsel's performance must be highly deferential. … A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Gray, 108 S.W.3d at 88 (citing Moore v. State, 39 S.W.3d 888, 892–93 (Mo. App. S.D. 2001)).

    1.  Relevant Facts

Movant contends that Counsel was ineffective for failing to investigate the existence of an alternative cause of Victim's death that was unrelated to Father's actions. Movant argues this was unreasonable given that Movant's guilt was dependent on Father's actions causing Victim's death. In support of this claim, Movant relies on the testimony of a forensic pathologist interviewed after Movant's plea, Dr. Jane Turner, who opined that it was not possible to rule out a non-traumatic cause of Victim's death.

At the evidentiary hearing, Dr. Turner opined in relevant part that Victim's medical records showed he suffered an intraventricular hemorrhage, which could represent the

6

aftereffects of a stroke or a rupture of abnormal blood vessels. Dr. Turner disagreed with the medical examiner's explanation that the hemorrhage was caused by blunt trauma head injury and instead opined that, given the medical records and the tests conducted, it was not possible to rule out a non-traumatic cause of Victim's stroke and therefore of Victim's death. According to Dr. Turner, there was evidence that Victim "may have experienced a stroke related to infection." She testified that no medical tests were performed to determine if Victim did in fact suffer a stroke and to identify its potential cause(s). Regarding Victim's numerous bone fractures—which the medical examiner attributed to trauma—Dr. Turner opined that trauma was a possible cause in addition to a metabolic bone disease. Dr. Turner's opinions were based on her review of the police reports, Victim's autopsy report, photographs and x-rays of Victim, and medical records pertaining to Victim and to Movant's pregnancy.[6]

Counsel testified at the evidentiary hearing that she visited Movant approximately ten times during her representation, which began shortly after charges were filed. Counsel reviewed the discovery in Movant's case on her own and with Movant, including the police reports, witness statements, and Victim's autopsy report and medical records. Based on this review, Counsel did not feel it was necessary to consult with a forensic pathologist or similar expert to review the medical examiner's determined cause of death, given that the medical examiner's autopsy report was "pretty clear []cut." Throughout her career, Counsel has reviewed "a couple dozen" autopsy reports, including approximately ten involving children out of which approximately three involved children around Victim's age. Counsel stated that, while reviewing the medical examiner's autopsy report together, she would have asked Movant if Movant wished

---

[6] None of these records are contained in the record on appeal before this Court. Therefore, their content will be taken as favorable to the motion court's ruling and as unfavorable to Movant. See Routt v. State (Routt I), 493 S.W.3d 904, 907 n.5 (Mo. App. E.D. 2016) (citing State v. Creech, 983 S.W.2d 169, 171 (Mo. App. E.D. 1998)).

to hire an expert. Movant never requested Counsel hire an expert. Ultimately, after discussing "the factual issues and the events that led up to the incident in question"—specifically Father's conduct towards Victim—Counsel determined there was no reason to seek another expert opinion. The motion court specifically found Counsel's testimony to be credible.

2. Counsel's investigation and preparation of Movant's case was reasonable and not deficient

Counsel's investigation and preparation of Movant's case—which did not include investigating an alternative cause of Victim's death—was reasonable given all the information Counsel had at the time, including information from Movant and discovery. From the beginning of Movant's case, Movant consistently described Father's repeated physical abuse of Victim. The information Counsel received from Movant about Father's actions was consistent with and supported the information contained in the medical examiner's autopsy report and Victim's medical records.[7] Counsel testified that the medical examiner's autopsy report was "pretty clear []cut," and that, after reviewing the report with Movant and discussing "the factual issues and the events that led up to the incident in question," Counsel determined there was no reason to seek another expert opinion. Movant argues, however, that indications in Victim's medical records that Victim suffered from an infection should have led Counsel to investigate further. But this information could also have been interpreted to be consistent with the information from Movant that she had previously taken Victim to the hospital to be treated for what she believed was influenza.

In the present case, Counsel was given no indication from the case files, discovery, other witnesses, or Movant herself that investigation into an alternative cause of Victim's death would

---

[7] These records are not contained in the record on appeal before this Court. Therefore, their contents will be taken as favorable to the motion court's ruling and as unfavorable to Movant. See Routt I, 493 S.W.3d at 907 n.5 (citing Creech, 983 S.W.2d at 171).

8

be fruitful.[8]  We are not convinced that Counsel's actions indicate a failure to utilize the skill, care, or diligence of a reasonable and competent attorney.  See Gray, 108 S.W.3d at 88–89 (finding plea counsel not ineffective for failing to investigate and interview witness who would have supported self-defense theory, given that nothing in the record indicated movant acted in self-defense); cf. Hill v. State, 301 S.W.3d 78, 83–84 (Mo. App. S.D. 2010) (denying claim regarding plea counsel's failure to investigate whether movant's bank notified him of his account's closure—which would have negated the intent element of the charge of passing a bad check—given that counsel reasonably concluded no further independent investigation was necessary after reviewing case files, which included testimony from bank president that he notified movant of account closure).

Further, the record shows that Counsel was prepared, met extensively with Movant, discussed the case and discovery together, and discussed and decided on a case strategy.  At her plea hearing, Movant confirmed that she had sufficient time to speak with Counsel about her case, that Counsel gave Movant copies of the police report and went over it with Movant, that Counsel explained what could happen at trial if she were found guilty, and that Movant was satisfied with Counsel's services. Movant confirmed that it was her decision alone, after

---

[8] It is for this reason that the present case is distinguishable from cases finding ineffective assistance of counsel due to an inadequate investigation in preparation for trial.  See, e.g., Wolfe v. State, 96 S.W.3d 90, 92–94 (Mo. banc 2003) (finding trial counsel ineffective for failing to investigate known hair samples that would have led to evidence directly contradicting State's star witness's testimony, under circumstances in which defendant had "consistently maintained his innocence," the defense theory was that the star witness was lying, and no physical evidence tied defendant to crime); Gennetten v. State, 96 S.W.3d 143, 152 (Mo. App. W.D. 2003) (finding trial counsel ineffective for failing to timely request and review discovery that resulted in failing to investigate doctor whose letter, included in discovery, evinced disagreement with medical report that victim's injuries were consistent with child abuse and instead indicated victim's injuries were accidental, consistent with defendant's description of cause); Perkey v. State, 68 S.W.3d 547, 549–552 (Mo. App W.D. 2001) (finding trial counsel ineffective for failing to investigate victim's family doctor—who would have testified that victim may have died of complications from pre-existing health problems rather than vehicle accident with movant—under circumstances in which medical records indicated victim's numerous health issues and identified family doctor and, without family doctor's testimony, jury heard no evidence that contradicted medical testimony that accident caused victim's death).

consultation with Counsel, to plead guilty and that at least one of the motivations for her plea was to avoid a trial in the hopes that she would receive a more favorable sentence—something about which she had spoken to Counsel. And at the sentencing hearing, Movant verified that Counsel spent "definitely over 48" hours speaking with Movant about her case prior to her plea hearing, which included going over discovery and discussing potential witnesses. Movant affirmed that she discussed her options with Counsel, that Movant chose to plead guilty, and that Counsel did not say or do anything with which Movant disagreed. Movant stated that, when she pleaded guilty, she felt ready to plead guilty as far as knowing where she stood under the law. Movant maintained she could not think of any reason that Counsel did not do an adequate job.

When the information before Counsel reflects the narrative told by her client, and together they review the available information and discovery and determine a case strategy, it is not unreasonable for Counsel to determine that further investigation into a contradicting strategy is unnecessary. Indeed,

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

Strickland, 466 U.S. at 691; see also Gray, 108 S.W.3d at 89 (citing Ervin, 80 S.W.3d at 824).

Under the circumstances here, we cannot say the motion court clearly erred in concluding that Counsel's choices were reasonable and that any failure to investigate an alternative cause of Victim's death was not outside the bounds of competent assistance. Because we agree Counsel's conduct in representing Movant was not deficient, we need not address whether Movant proved

10

she was prejudiced by Counsel's conduct.  See Lusk, 655 S.W.3d at 234 (citing Farr, 408 S.W.3d at 322).

Point I is denied.

Ineffective Assistance of Counsel Surrounding Sentencing (Points II through IV)

In her remaining three points on appeal, Movant asserts Counsel provided ineffective assistance at her sentencing hearing by: failing to present mitigating testimony from Movant's former roommate; failing to obtain and present mitigating evidence in the form of Movant's high school counseling records; and failing to object to hearsay testimony from the lead detective. Because all three claims relate to Movant's sentencing and Movant asks that we view collectively the impact of Counsel's complained-of conduct on her sentence, we address Points II, III, and IV together.

*Law governing ineffective assistance of counsel at sentencing*

"A claim of ineffective assistance of counsel at sentencing following a guilty plea is a 'cognizable' claim under Rule 24.035."  Cherco v. State, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010) (citing Griffin v. State, 937 S.W.2d 400, 401 (Mo. App. E.D. 1997)).  "If a defendant aggrieved by ineffective assistance of counsel at sentencing is willing to abide by the guilty plea or conviction, the defendant nonetheless may have recourse under a post-conviction motion if the defendant demonstrates there is a reasonable probability that sentencing was influenced by ineffective assistance of counsel during sentencing."  Id. at 830.

As outlined in our discussion of Point I, to establish ineffective assistance of counsel a movant must show both that: (1) counsel's performance was deficient in that counsel failed to exercise the level of skill, care, and diligence that reasonably competent counsel would exercise in a similar situation; and (2) that failure prejudiced movant.  See id. at 829–30 (citing

11

Strickland, 466 U.S. at 687–88). To establish prejudice in the sentencing context a movant must show that a reasonable probability exists that, but for sentencing counsel's deficient performance, the movant would have received a lesser sentence. Id. at 827–30 (citing Strickland, 466 U.S. at 687–88).

*The motion court did not clearly err in denying the claim that Counsel was ineffective for deciding not to call Movant's former roommate to testify at sentencing (Point II)*

In her second point on appeal, Movant argues the motion court clearly erred in denying her claim that she was prejudiced by Counsel's ineffectiveness in failing to present mitigation evidence at sentencing, specifically testimony from her and Father's former roommate (Roommate). We disagree.

The motion court did not clearly err in denying Movant's claim after concluding Counsel's decision not to call Roommate to testify at Movant's sentencing did not fall outside the wide range of professional competent assistance. To establish the performance prong of an ineffective-assistance claim based on counsel's failure to investigate and call a witness at sentencing, the movant must show: (1) counsel knew or should have known of the witness's existence, *i.e.*, the witness could have been located through a reasonable investigation; (2) the witness would have testified if called; and (3) the witness's testimony would have aided in the movant's defense. See id. at 825 (citing State v. Gilpin, 954 S.W.2d 570, 576 (Mo. App. W.D. 1997)). The movant must further establish that counsel's decision involved something other than reasonable strategy. Id. (citing Gilpin, 954 S.W.2d at 576).

Here, Movant is unable to overcome the strong presumption that Counsel's decision not to call Roommate at sentencing was a reasonable strategic choice.

It was reasonable for Counsel to decide not to call Roommate given the evidence that his testimony would not have unqualifiedly supported Movant. It is a matter of legal strategy to not

12

call a witness whom counsel believes "would not unequivocally support" the client's position, and "the failure to call such witness does not constitute ineffective assistance of counsel." Crocker v. State, 488 S.W.3d 127, 134 (Mo. App. E.D. 2016) (quoting Robinson v. State, 469 S.W.3d 871, 881 (Mo. App. E.D. 2015)). At the evidentiary hearing, Counsel testified that she was aware of Roommate and considered calling him to testify on Movant's behalf at sentencing, but ultimately determined that Roommate's testimony was a "double-edged sword for [Movant's] case" in that it "would most certainly help [Movant] because she did not take part in what [Father] had allegedly done," but "that it also showed that she was aware that it was happening." Based on Counsel's telephone calls with Roommate and his deposition testimony,[9] Counsel was worried his testimony could cast Movant in a negative light and highlight that she failed to act to protect Victim despite "all of this advance notice and all these warning signs." Specifically, Counsel was worried about Roommate emphasizing the several occasions on which he and Movant had discussed the issues with Father's treatment of Victim.

Further, there was evidence that Roommate may not have been available and willing to testify. At the evidentiary hearing, Counsel explained that she had spoken with Roommate several times on the telephone and that he "was having difficulty a couple different times trying to make it here." Counsel explained to Movant that Roommate "was saying he doesn't think he's going to be able to make it," and that, the last time Counsel spoke with Roommate, "he kind of had a different attitude, didn't seem he was coming or wanted to come."[10]

---

[9] At the evidentiary hearing, Roommate testified that he recalled being deposed regarding Victim's death. A transcript of Roommate's deposition is not contained in the record on appeal before this Court. Therefore, its contents will be taken as favorable to the motion court's ruling and as unfavorable to Movant. See Routt I, 493 S.W.3d at 907 n.5 (citing Creech, 983 S.W.2d at 171).

[10] The motion court specifically found Counsel's testimony to be credible.

Given the above, we cannot say the motion court clearly erred in concluding Counsel's decision not to call Roommate to testify at sentencing was reasonable and not outside the bounds of competent assistance. See id. (finding counsel's decision not to call experts at sentencing was "reasonable strategy" in part because testimony would not have unequivocally supported defense); Jackson v. State, 647 S.W.3d 881, 889 (Mo. App. W.D. 2022) (finding counsel's decision not to call expert at sentencing was "prudent trial strategy" given that counsel's decision "stemmed from his direct communication with the [expert] and his concern that her testimony would not benefit [movant]"); see also Deck v. State, 381 S.W.3d 339, 352–53 (Mo. banc 2012). Because we agree Counsel's conduct was not deficient, we need not address whether Movant proved she was prejudiced by Counsel's conduct. See Lusk, 655 S.W.3d at 234 (citing Farr, 408 S.W.3d at 322).

*The motion court did not clearly err in denying the claim that Counsel was ineffective for failing to obtain and present Movant's high school counseling records (Point III)*

In her third point on appeal, Movant argues the motion court clearly erred in denying her claim that she was prejudiced by Counsel's ineffectiveness in failing to obtain and present mitigation evidence at sentencing, specifically counseling records from Youth In Need (the YIN records).[11] We disagree.

The YIN records concerned a period from February to August 2014, when Movant was 17 years old, and indicated that Movant engaged in six individual counseling sessions, six group counseling sessions, and three parent/family counseling sessions. In relevant part, the records noted that Movant had a history of "suicidal/dark thoughts" and "cutting," and that her parents reported concern over Movant's "coping skills," "self-injury," and "depression." The records

---

[11] The Youth In Need records were admitted into evidence at the evidentiary hearing and were accompanied by a business records affidavit.

stated that Movant and her parents sought "counseling to address concerns regarding coping and family communication," with specific goals to "improve coping skills when overwhelmed," to "improve family communication and relationships," and to "improve self-esteem and self-image." Movant's counselor and her parents determined that Movant no longer needed counseling services as of August 2014, which was over two years prior to Victim's death and prior to Movant beginning a relationship with Father.

Even assuming *arguendo* that Counsel's failure to obtain these records was deficient, the motion court did not clearly err in concluding Movant failed to demonstrate she was prejudiced by Counsel's failure to present the YIN records. The information contained in the YIN records would not have enhanced the evidence before the sentencing court in a meaningful way. Movant herself told the sentencing court that she experienced depression throughout high school, including a history of self-harm, and that she attended counseling sessions with Youth In Need. Movant described her relationship before Father as a "toxic" one that brought her further into depression. Movant also detailed how she experienced stress and verbal abuse at home, and explained that she and her parents attended family therapy. At sentencing, Counsel presented the court with argument highlighting Movant's difficulties during adolescence, including "growing up with her parents fighting," being isolated, having "self-image problems," and engaging in self-harm. The sentencing court also received pertinent information regarding Movant's history and behavior from the Sentencing Assessment Report (SAR). Specifically, the SAR stated that, "in approximately the eleventh grade of high school, [Movant] stated that she began cutting herself. After performing a poem on depression in class, she was referred to Youth In Need for group counseling, which she attended for approximately one month. [Movant] stated that she

15

feels that she eventually outgrew cutting herself and that she had not done so in the year prior to her arrest in this case."

In sum, the YIN records would have been largely cumulative of information already before the sentencing court.[12] See Lusk, 655 S.W.3d at 238 ("Evidence is considered cumulative when it addresses a matter fully developed by other testimony." (quoting Eye v. State, 551 S.W.3d 671, 675 (Mo. App. E.D. 2018))). As such, there is not a reasonable probability that Movant would have received a lesser sentence had Counsel obtained and presented these records. See id.; Varvil v. State, 645 S.W.3d 113, 116–17 (Mo. App. E.D. 2022) (finding no prejudice from failure to call character witnesses at sentencing because record showed sentencing court possessed similar information about movant's history and behavior from other witness, counsel, and sentencing assessment report); Eichelberger v. State, 134 S.W.3d 790, 794 (Mo. App. W.D. 2004) (finding no prejudice from failure to call character witnesses at sentencing because record showed sentencing court "possessed the same character information before it at the time of sentencing" through letters, pre-sentence investigation, and expert testimony).

Moreover, the sentencing court explained that Movant's sentence was predominantly based on Movant's admission to allowing horrific actions to happen to Victim over the course of multiple weeks, her failure to protect Victim despite knowing of the wrongness of Father's behavior, and her failure to timely disclose that behavior to medical professionals at the hospital. This explanation confirms the motion court's conclusion that additional evidence regarding

---

[12] Movant argues the YIN records were significant because they refute information contained in the SAR that Movant's parents denied she had any mental health issue. We are not persuaded. The YIN records indicated Movant and her family attended counseling "to address concerns regarding coping and family communication" but that Movant's parents and counselor jointly decided to end the counseling because Movant no longer had need for counseling. Viewed as counseling with an emphasis on family communication and coping, these records are not inconsistent with Movant's plea hearing statement that she "had never been treated for a mental illness," Movant's sentencing hearing statement that she did not "medically" have any history of mental illness, or statements in the SAR that Movant's parents denied she had any mental health issue.

Movant's history would not have resulted in a lesser sentence. See Routt II, 535 S.W.3d at 818–20 (finding no prejudice from failure to call character witness at sentencing given that sentence was based primarily on movant's criminal history and testimony would have been cumulative); Varvil, 645 S.W.3d at 117 (noting that "additional evidence regarding Movant's character" was unlikely to result in lesser sentences given that sentencing court explained sentences were based on impact of crimes on victims).

Given the above, we cannot say the motion court clearly erred in denying Movant's claim that Counsel was ineffective for failing to obtain and present the YIN records at sentencing. Because we agree Movant has failed to establish prejudice, we need not address whether Counsel's conduct was deficient. See Lusk, 655 S.W.3d at 234 (citing Farr, 408 S.W.3d at 322).

*The motion court did not clearly err in denying the claim that Counsel was ineffective for failing to object to hearsay testimony at sentencing (Point IV)*

In her fourth and final point on appeal, Movant argues the motion court clearly erred in denying her claim that she was prejudiced by Counsel's ineffectiveness in failing to object to hearsay testimony from the lead detective regarding alleged incriminating statements made by Movant to another inmate while she was incarcerated pre-trial. We disagree.

At the sentencing hearing, Detective Rosner recounted that a jailhouse informant, Tamra Gillam, told another detective that Movant had described slamming Victim's head into a dresser and suffocating Victim, allegedly stating that a death caused by suffocation might appear to be a case of Sudden Infant Death Syndrome (SIDS). On cross-examination, Detective Rosner admitted that, although he did not take Gillam's statement, he was aware she made a statement and was aware that, at the time of the statement, Gillam was in jail and had a criminal record. At sentencing, Movant denied speaking with Gillam and unequivocally denied the veracity of Gillam's statements.

17

The SAR also relayed that Movant's cellmate stated that Movant had "told her that [Movant] had thrown her son against a dresser one time because he would not stop crying," that "[a]nother time she had leaned on the child to get him to stop breathing" and that "if the child dies, they could say he died of Sudden Infant Death Syndrome," in addition to Movant expressing fear that "if the child died she would be charged with murder." Counsel argued to the court at sentencing that the "informant" referenced in the SAR erroneously stated she had nothing to gain by passing along Movant's alleged statements but, in fact, the informant was Gillam, an individual with a lengthy criminal history who had multiple arrest warrants at the time of her informing.

At the evidentiary hearing, Counsel explained that she did not object to Detective Rosner's hearsay testimony about Gillam's statements because she "thought it would be m[o]re effective to get him to bring it up on cross" because "it was ludicrous" and Gillam's allegations were not credible.[13] Counsel also stated that she brought up necessary corrections to Gillam's allegations contained in the SAR at the beginning of the sentencing hearing, but that objecting to Detective Rosner's testimony would not have removed the related information from the SAR.

Counsel's decision not to object to hearsay statements during Detective Rosner's testimony was reasonable and did not fall outside the range of professional competent assistance. Counsel worked to discredit these statements when she lodged her corrections to the SAR at sentencing and during her cross-examination of Detective Rosner. This conduct fit within Counsel's stated strategy regarding these statements: namely, that they were so incredible that they would not be believed. We could understand how Counsel reasonably may have decided not to object and highlight these statements, which could have lent them weight. Cf. Jones v. State,

---

[13] The motion court specifically found Counsel's testimony to be credible.

18

631 S.W.3d 682, 691 (Mo. App. S.D. 2021) (recognizing that attorneys often decide not to object because objections may "highlight the statements complained of, resulting in more harm than good," (quoting Barton v. State, 432 S.W.3d 741, 754 (Mo. banc 2014))).

Moreover, even assuming *arguendo* that Counsel's failure to object constituted deficient performance, the motion court did not clearly err in concluding Movant failed to demonstrate she was prejudiced by this conduct.

First, the complained-of statements were also detailed in the SAR, which was part of the court file and with which the sentencing court was familiar. "Counsel's failure to object to cumulative evidence, even where the trial court would have sustained the objection, does not result in prejudice." Lusk, 655 S.W.3d at 238 (quoting Polk v. State, 539 S.W.3d 808, 822 (Mo. App. W.D. 2017)). Because the content of the complained-of testimony was included in the SAR, Movant has failed to demonstrate she was prejudiced by Counsel's failure to object to Detective Rosner's cumulative hearsay testimony. See id. (finding no prejudice from failure to object to prosecutor's remark at sentencing because the sentencing assessment report detailed the same facts, rendering prosecutor's remark cumulative).

Second, because the sentencing was heard and decided by a court, not a jury, we assume the sentence was not affected by improper matters. See Johnson v. State, 552 S.W.3d 768, 773 (Mo. App. E.D. 2018) (explaining that we presume "the sentencing court's 'experience and expertise enable the judge to consider appropriate sentencing factors and to disregard improper matters,'" (quoting State v. Donovan, 539 S.W.3d 57, 72 (Mo. App. E.D. 2017))). Here, the court clarified that its sentence was based on Movant's repeated failures to protect Victim or seek help. There was no indication that the complained-of statements in Detective Rosner's testimony—or their equivalent contained in the SAR—were relied on by the court in determining

19

Movant's sentence.  See Childers v. State, 462 S.W.3d 825, 829 (Mo. App. E.D. 2015) (finding no prejudice from counsel's failure to object to admission at sentencing of letter whose writer claimed to have been raped by movant, given that "there was no evidence the trial court had actually relied on this letter").

The motion court did not clearly err in denying Movant's claim that she was prejudiced by Counsel's failure to object to the complained-of hearsay statements at sentencing.

Even looking at the totality of the evidence presented at sentencing and analyzing the potential prejudice of Movant's three sentencing-related claims in a cumulative manner, we conclude the motion court did not clearly err in denying these claims.  Movant has failed to demonstrate a reasonable probability that calling Roommate to testify, presenting the YIN records, and excluding Detective Rosner's hearsay testimony together would have resulted in a lesser sentence, especially given the sentencing court's stated reason for the sentence: Movant's admitted, repeated failures to protect Victim or seek help. Our conclusion is bolstered by the fact that the motion court and the sentencing court were the same.  See Varvil, 645 S.W.3d at 117 (noting that Strickland provides for an objective standard while also acknowledging "[t]he fact that the motion court had presided over [m]ovant's sentencing placed it in a special position to evaluate the potential effect of additional character or mitigation evidence," (citing Dawson v. State, 611 S.W.3d 761, 767 (Mo. App. W.D. 2020) and Cherco, 309 S.W.3d at 831)).

Having reviewed the record of this case we are not left with the definite and firm impression that a mistake has been made, and we therefore affirm the denial of Movant's claims that Counsel provided ineffective assistance at her sentencing.

Points II, III, and IV are denied.

20

<u>Conclusion</u>

For the foregoing reasons, we affirm the motion court's denial of Movant's amended Rule 24.035 motion.

_____
SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.